Thomas E. **BLUNT**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 20119.

United States Court of Appeals
District of Columbia Circuit.

Argued June 29, 1967.

Decided Dec. 12, 1967.

Mr. Neal E. Krucoff, Washington, D. C. (appointed by this court) for appellant.

Mr. Carl S. Rauh, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S.

Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Messrs. Robert S. Brady, Attorney, Department of Justice, and James A. Strazzella, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, and WRIGHT, Circuit Judge, DAVIS,* Judge, United States Court of Claims.

BAZELON, Chief Judge:

■ This appeal from a conviction for housebreaking attacks the adequacy of a pretrial competency hearing.[1] Before trial appellant was committed to Saint Elizabeths for a mental examination pursuant to D.C.Code, 1961 ed., § 24–301(a). By letter dated April 2, 1965, the Hospital Superintendent informed the court without elaboration of its inquiry or diagnosis that "Mr. Blunt is mentally competent for trial * * * [and] is not now or was not * * * suffering from mental disease or defect." At a hearing held on April 15, 1965, 10 months before trial, Dr. Eugene Stanmeyer, Supervisory Clinical Psychologist at Saint Elizabeths, testified that in his opinion Blunt was unable to assist counsel. The court, sua sponte, then interrupted appellant's case by calling staff psychiatrist Dr. Strady H. Economon. However, the court refused to permit cross-examination of Dr. Economon about matters to which the Government later stipulated, Dr. Economon's differences with Dr. Stanmeyer, and the basis for the Hospital's opinion. Although appellant had been found competent to stand trial, he was afterwards given two mental examinations and competency hearings. He was not present at either of these, and the order following the more recent finds him competent because he had previously

---

* Sitting by designation pursuant to Title 28, Section 293(a), U.S.Code.

1. In 1952 appellant Blunt was indicted for five robberies and a housebreaking and larceny. At his arraignment the court ordered a psychiatric examination which resulted in his certification as of unsound mind and suffering from a psychosis. He was subsequently found incompetent to stand trial and was committed to Saint Elizabeths Hospital. In August 1953 he was certified competent to stand trial and in October 1953, without any judicial determination of restored competency, was tried and convicted on three charges of robbery. In Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957), we reversed his conviction because of error relating to the issue of insanity.

been found competent.[2] Appellant now argues that the trial court abused its discretion in the first hearing, that of April 15, 1965.

■ In providing in § 24–301(a) for a hearing, Congress set no standards, but it had expressed an interest in "speed[ing] up procedures without prejudicing accused."[3] We noted in Hansford v. United States that a competency hearing "need not be a lengthy and involved proceeding. However, as a minimum we think the inquiry must be of record and both parties must be given the opportunity to examine all witnesses who testify or report on the accused's competence."[4] We had already recognized in Holloway v. United States that "The judicial determination must, of course, be an informed one."[5] Moreover, the Supreme Court has required counsel at the hearing unless meaningfully waived.[6] These standards are of little value unless full and scrupulous attention is given to evidence concerning competency. Pate v. Robinson[7] requires such attention at trial whether or not there has been a hearing. No less than the same careful evaluation of an ac-cused's condition is required of the court during a competency hearing.

At the April 15 hearing, which was the only contested investigation of competency, appellant first called Dr. Stanmeyer who supervised the scoring and interpretation of a battery of four psychological tests[8] prior to their consideration by Dr. Economon and Dr. Maurice Platkin at a staff conference. Based on his review of the tests, Dr. Stanmeyer testified that appellant scored an I.Q. of 81; could not objectively decide whether to challenge a juror or take the stand; and was unlikely to "follow the course of a prolonged trial in terms of postulating questions to * * * witnesses."

■ In Jenkins v. United States[9] we said that when a psychologist has the requisite training or experience his testimony should be given consideration with that of other experts in the field of mental disorder.[10] Rather than evaluate Dr. Stanmeyer's qualifications, the court disregarded *Jenkins* and turned the hearing into an inquiry into any psychologist's competency to make informed observations about Blunt without medical training.[11] For example, when Dr. Stan-

---

2. At the second hearing held October 26, 1965, newly appointed defense counsel agreed to a finding of appellant's competency. Notwithstanding this agreement, we think that in view of the nature of the testimony adduced at the prior hearing, appellant's previous history with respect to competency to stand trial and insanity, and the fact that his counsel apparently did not have the benefit of a transcript of the first hearing, a full hearing was required. See Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965), where the court recognized that a hearing could be required although no objection was made to certification of competency.

3. S.Rep. No. 1170, 84th Cong., 1st Sess. 3 (1955), H.R.Rep. No. 892, 84th Cong., 1st Sess. 3 (1955).

4. 124 U.S.App.D.C. 387, 390 n. 8, 365 F.2d 920, 923 n. 8 (1966).

5. 119 U.S.App.D.C. 396, 398, 343 F.2d 265, 267 (1964).

6. Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966).

7. 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

8. The tests included the Weschler test, which scores I.Q., the Bender-Gestalt test, which checks for organic pathology, and the Rorschach and projected drawing tests, which help identify personality pathology.

9. 113 U.S.App.D.C. 300, 307–309, 307 F. 2d 637, 643–646 (1962).

10. Dr. Stanmeyer received a Bachelor of Arts degree from Morris College, Dubuque, Iowa, in 1951, a Masters Degree in Clinical Psychology in 1958 and a Ph.D. in 1961 from the Catholic University of America. He subsequently served two years of supervised internship at Saint Elizabeths and had a one year supervision internship at the Child Care Center of Catholic University of America before returning to the staff of Saint Elizabeths.

11. Although a lack of general medical background may affect the weight given a psychologist's testimony, there was no adequate basis for the treatment accorded Dr. Stanmeyer, especially as contrasted with that given Dr. Economon. For ex-

meyer presented his interpretation of the results of the Bender-Gestalt test the following took place:

THE COURT: What does that particular test relate to from the standpoint of your experiment? What is the nature of the experiment?

THE WITNESS: Basically, the test is a test of organic brain pathology. This is the reason that it was devised.

THE COURT: You do not presume to testify as to whether there is absence or presence of organic brain pathology, do you?

THE WITNESS: Yes, sir.

THE COURT: You have no training in anatomy, have you?

THE WITNESS: I have had training in anatomy.

THE COURT: I mean you have never done any anatomy, so-called, any gross anatomy? You have never dissected a cadaver, have you?

And later when counsel sought Dr. Stanmeyer's evaluation of appellant's competency in light of the diagnosis in 1952 of psychosis and incompetency, referred to in note 1, *supra,* the court questioned:

THE COURT: Are you familiar with the different types of schizophrenia?

THE WITNESS: I am familiar with diagnostic principles.

THE COURT: I am not trying to give you a bad time but again I am suggesting you are in a field that is not your own. Schizophrenia is definitely something outside your field.

You may deal with results or manifestations symptomatically but, as far as telling me anything about schizophrenia, I don't think you're qualified.

THE WITNESS: That is our area of specialty in clinical psychology.

■ The court erred also in calling Dr. Economon out of turn and restricting the scope of his cross-examination.[12] Appellant's counsel had sought to question Dr. Economon about information to which Blunt's mother, appellant's second witness was prepared to testify. This included personal history which was not known by the staff psychiatrists at the conference. Yet the court refused to allow questioning of Dr. Economon about this testimony [13] which would have been

---

ample, on cross-examination counsel sought to question Dr. Economon about the Saint Elizabeths staff conference which considered Blunt's case. In particular, he sought to determine the amount of time spent interviewing Blunt by the staff psychiatrist at the conference. The distinction the court was prepared to draw between medical and nonmedical testimony is suggested by the following:

Q: At this conference at which you extensively reviewed his history, interviewed him and reviewed his case, how long did that conference last?

A: I would say that the conference lasted perhaps an hour or more. I don't recall exactly.

Q: Approximately how much time was spent in interviewing the defendant out of this hour.

THE COURT: How important is this? *A medical doctor can take a look at an individual and see death in his face without examination at all.* [Emphasis added.]

MR. AARONSON [appellant's counsel]: And can he see competence to stand trial on his face, too?

THE COURT: Do not become facetious.

12. At the close of Dr. Stanmeyer's testimony the court said, "I want to call Dr. Economon out of turn. Dr. Economon has been waiting a long time. You have no objection, I take it?" Defense counsel replied, "No objection." However, he could not have anticipated that the court would deny him the opportunity to question Dr. Economon about information to which appellant's second witness would testify.

13. Q: In your report * * * you say that * * * "(t)he conference feels that if this patient were suffering from schizophrenia certainly there would have been some evidence in there since 1953 when he was released from this hospital."

If * * * the committee was aware that the defendant had passed out from

before the court had appellant been permitted to proceed with his case and to which the court later urged the Government to stipulate.[14] Attempts by appellant's counsel to ask Dr. Economon about the basis for the Hospital's conclusions also were blocked when the court refused to let the psychiatrist answer.

Q: You testified he could understand the charges against him and hear testimony. Do you feel that he could participate with counsel in a decision whether he could take the stand or not?

A: Yes, by definition. With respect—

THE COURT: The answer is yes.

Q: Do you feel he could help select a jury in determining whether to challenge a juror?

A: What specifically do you mean by challenging a juror?

THE COURT: I will exclude that. Thank you very much.

Q: Do you feel he could appreciate the evidence given at the trial and its significance?

THE COURT: That is not the question of competency. I will exclude that.

And when counsel sought to identify the areas of difference between the Hospital and Dr. Stanmeyer, the court continued to foreclose meaningful inquiry.

Q: You disagree personally with this [the psychologist's] statement although it is in the report?

severe headaches in 1962, would that have altered your opinion?
MR. SIDMAN [Assistant United States Attorney]: Objection, if Your Honor please.
THE COURT: Sustained.
Q: Your opinion concerning competency—
THE COURT: I said objection sustained. Don't answer.
Q: If you knew of letters written by defendant—
THE COURT: Same objection and same ruling. Thank you very much.
Q: I had hoped to establish—
THE COURT: I know what you hoped to establish but you can't do it this way.

14. MR. AARONSON: I have one further witness.

A: I neither agree or disagree. I accept it as a psychology test. Like any laboratory test, they are considered when a diagnosis is made by a psychiatrist. This is merely data. It appeared—

THE COURT: You have answered Doctor. Thank you very much.

Q: The statement, I believe, makes a prediction. Do you have an opinion as to whether it is true or false?

THE COURT: The witness has answered the question with respect to that. We won't pursue it any further.

Q: Do you believe that this defendant would experience unusual tensions or anxiety—

THE COURT: We have been through that, Mr. Aaronson, and I don't want you to become repetitive.

While a court need not hold a lengthy or involved proceeding, it must hold a fair and adequate one. The strictures imposed on counsel's development of relevant evidence so limited the possibility of a full and scrupulous evaluation of appellant's competency as to leave us unable to say that there was a properly informed judicial determination. Since the finding as to competency was based on a hearing held almost 32 months ago (or 10 months before Blunt's trial on February 14, 1966), we think Dusky v. United States requires reversal for a new trial rather than remand for *nunc pro tunc* proceedings.[15]

So ordered.

THE COURT: Make a proffer.
MR. AARONSON: He will testify to events that have occurred in defendant's life.
THE COURT: What are they? The Government will probably stipulate to them. What are they?

15. 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). The court said that because of the "difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent."