Thomas E. BLUNT, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20956.

United States Court of Appeals
District of Columbia Circuit.

Argued June 27, 1968.

Decided Oct. 2, 1968.

Petition for Rehearing Denied
Nov. 5, 1968.

Certiorari Denied March 10, 1969.

See 89 S.Ct. 1021.

Mr. James L. Highsaw, Jr., Washington, D. C., (appointed by this court) for appellant.

Carl S. Rauh, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

BAZELON, Chief Judge:

Appellant seeks reversal of his conviction on an eight-count indictment charging robbery, fraud by wire, and forgery and uttering. At about 1:00 a. m.

on December 23, 1964, one Robert Fleming was robbed of his wallet at gunpoint by three Negro males in a downtown Washington alley. The wallet contained money, a driver's license, personal papers, traveler's checks, and a book of blank checks from the United States National Bank of Oregon bearing his printed name and Oregon address. In the course of the same day, a man claiming to be Fleming and showing Fleming's identification came on three separate occasions to Kay's jewelry store. On each occasion, he wrote and cashed a check matching the description of the stolen checks. He purchased respectively a lady's watch (check for $169.45), a man's diamond ring (check for $450.87), and a man's watch (check for $338.95). An imposter Fleming also appeared three times during the day at a Western Union office in an attempt to obtain $500.00 by wire in Fleming's name from the National Bank of Oregon. Appellant was arrested at the Western Union office at 8:45 p. m. that evening, when a clerk identified him to the police as the man who had been trying to cash the wired draft.

At his long-delayed trial on March 1, 1967, appellant was identified by three Western Union clerks and by two sales personnel from Kay's Jewelers. The victim Fleming was unable to identify him. However, the Government's evidence also established that the diamond ring purchased at Kay's with one of the forged checks was in appellant's possession after his arrest, and that Fleming's wallet was subsequently found in the back seat of the car in which appellant had hitchhiked to the Western Union office immediately prior to his arrest. In addition, the driver of the car testified that appellant, a stranger to him, had shown him a new lady's watch he said he was planning to give his wife for Christmas. Testifying in his own defense, appellant presented a detailed alibi reconstructing his alleged innocent activities on the day the crimes took place. Although he claimed to have been in the company of numerous persons on the day in question, none of them appeared to corroborate his testimony.

On this evidence, the jury found him guilty on all counts. The court sentenced him to imprisonment for from five to fifteen years on the robbery count, with lesser concurrent sentences on the other counts. On appeal, he raises issues relating to (1) his competency to stand trial, (2) his right to a speedy trial, (3) the joinder of separate offenses in a single indictment and trial, (4) the instructions to the jury, and (5) delay in preparation of the trial transcript for purposes of appeal.

■ (1) Appellant has been in this court before on other charges.[1] On his most recent appeal, we reversed his conviction for housebreaking because of defects in the hearing on his competency to stand trial. Blunt v. United States, 128 U.S.App.D.C. 375, 389 F.2d 545 (1967). We held that the errors were not subsequently cured by a second and still a third determination of competency, since newly appointed defense counsel had apparently consented to the second without knowledge of the defects in the first hearing, and since the third determination was based on the other two. 128 U.S.App. D.C. at 376–377, 389 F.2d at 546–547 and n. 2. Appellant contends that this holding compels reversal of his present conviction as well because in denying a motion for mental examination in this case on May 10, 1965, the court relied on the determination of competency made at the original defective hearing in the housebreaking case a month before. However we think the controlling question is whether there had been an adequate determination of his competency by the time appellant finally went to trial in this case.

By that time, appellant had been examined twice more. At his first trial on the present charges, on September

1. See Blunt v. United States, 100 U.S. App.D.C. 266, 244 F.2d 355 (1957); Blunt v. United States, 128 U.S.App.D. C. 375, 389 F.2d 545 (1967).

14, 1966, his bizarre behavior [2] resulted in a mistrial and a subsequent mental examination at St. Elizabeths Hospital. The Hospital reported him competent. Defense counsel objected to this report and obtained the appointment of the Georgetown University Pre-Trial Clinic to examine appellant. When this examination also resulted in a conclusion of competency, defense counsel did not object to the court's subsequent determination that appellant was competent to stand trial.

Thus, in connection with the two prosecutions, appellant was examined and reported competent five times by four different psychiatric institutions within the twenty months immediately preceding this final determination of competency.[3] In considering the adequacy of that determination, we note 1) counsel's initiative in pursuing an independent examination, 2) the failure of that examination to support his client's claim of incompetency, and 3) the already long delay in appellant's trial. In these circumstances, while a *sua sponte* hearing would have removed any lingering doubt, we think the court's failure to conduct one was not error affecting substantial rights.[4]

■ (2) Appellant says that in any event he was denied his right to a speedy trial. His first trial in this case took place 21 months after his arrest and 17 months after his indictment. Because of the mistrial and an extraordinary 11-month delay in the preparation of the transcript for the appeal, appellant has

now been incarcerated some 44 months without final resolution of his case. No one connected with the administration of justice can take pride in such a record.

Nonetheless, neither the court nor the Government is primarily responsible. At the time of his arrest on December 23, 1964, appellant was free on bond in connection with the housebreaking offense for which he was convicted on February 14, 1966. The court not unreasonably directed that the earlier offense be tried first. Thus, 15 months were consumed in the series of mental examinations and hearings, all at appellant's request, which preceded his trial on the housebreaking charge. Then follows an unexplained two-month delay, a one-month continuance to enable the Government to obtain a witness from Oregon, an ironic six-week interruption while appellant pressed his motion to dismiss for lack of a speedy trial, and a final two-month continuance while both counsel were on vacation. On September 14, 1966, appellant was finally brought to trial. There is no suggestion that the additional delay after the resulting mistrial was unnecessary. Thus, it would appear that the Government may be charged with only three months of the total delay.

■ Appellant argues, however, that if his original competency hearing on April 15, 1965 had been a fair one, none of the succeeding chain of mental examinations would have been necessary, and both trials would have been held promptly or not at all. But the record convinces us that a proper competency

---

2. Appellant stood up in the midst of the trial and declared, "I am going to stand up." Told to be seated, he responded, "The court is out of turn. I am standing up for my rights."

3. Appellant was reported competent by Saint Elizabeths Hospital on April 2, 1965; by D.C. General Hospital on June 22, 1965; by Legal Psychiatric Services on October 21, 1965; again by Saint Elizabeths on November 2, 1966; and by the Georgetown Pretrial Clinic in January, 1967.

4. In addition it appears that the trial court addressed questions to appellant

out of the presence of the jury to determine whether there were any obvious signs of incompetency. And we also note that appellant was able to explain to the court that he wished to take the stand only if he could be assured that his prior criminal record would not be used against him, that he seemed to testify coherently, and that he also appeared to respond intelligently and alertly under cross-examination. These matters, standing alone, would not remove the need for a hearing which is otherwise required, but they do buttress our conclusion that the failure to conduct a hearing in this case was not reversible error.

hearing at the outset would hardly have been the "stitch in time." In any case, where a principal cause of postponement is the deliberate pace of the system of safeguards designed to protect the accused, the courts have been exceedingly reluctant to find constitutional infirmity even in very long delays.[5]

But appellant urges that he was fatally prejudiced by the delay in this case.[6] He alleges that he was deprived of the testimony of witnesses who could corroborate his alibi. He says one is dead, one has left the jurisdiction, and the others cannot remember where he was on a specific day long ago. Moreover, this prejudice was aggravated, he asserts, when the prosecutor adverted to the absence of supporting witnesses in his argument to the jury.

But whatever may have happened to other possible witnesses, appellant's alibi placed him in the company of his mother, sister, and girl friend for much of the relevant time. All three were available at the time of the trial.[7] It is not surprising that persons with no reason to recall would forget the events of a particular day two years before. But appellant was arrested on the day the crimes were committed. If his intimates knew then that he was innocent because he was with them at the crucial time, it strains credulity to suppose that they would ever forget that simple and vital fact.[8] Moreover, the Government's evidence, including five eye-witness identifications and convincing proof connecting appellant with fruits of the crime, completely discredits the alibi. In these circumstances, we think appellant was not materially prejudiced by the delay.[9]

(3) Appellant argues (a) that the eight-count indictment improperly joined unrelated offenses in violation of Rule 8(a) of the Federal Rules of Criminal Procedure, or (b) that in any case the trial judge erred in denying his motion under Rule 14 for severance on account of prejudice.

---

5. See United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Wilkins v. United States, 129 U.S.App.D.C. 397, 395 F.2d 620 (1968); Hedgepeth v. United States, 124 U.S.App. D.C. 291, 364 F.2d 684 (1966).

6. The "likelihood, or at least reasonable possibility, that defendant has been prejudiced by the delay" is a factor to be considered in determining whether there has been a denial of speedy trial. Hedgepeth v. United States, *supra* note 5, 124 U.S.App.D.C. at 294, 364 F.2d at 687.

7. His sister in fact first told trial counsel that she would testify, then later decided that she could not remember whether appellant was home or not on the morning in question.

8. We do not rely on the Government's suggestion that appellant showed lack of diligence in failing to take the statements of possible witnesses soon after his arrest. He himself was in jail, he had no appointed counsel for three months and has had a succession of different counsel since then. But we think the trial court had ample basis for rejecting appellant's claim that the people with whom he lived forgot the fact that obviously might have proved his innocence.

9. Cf. Wilkins v. United States, *supra* note 5, where we found no denial of speedy trial in a 16½ month delay:

> The only contention of prejudice to Appellant's defense is that a defense witness, who is alleged to have been at an "alibi" birthday party, died before trial. Appellant claimed that there were others at this party including one person who so testified at trial. None of the other persons present at the party came forward and none were sought by subpoena * * *. Under these circumstances we find no significant basis for a claim of prejudice. 129 U.S.App.D.C. at 398–399, 395 F.2d at 621–622.

Appellant also complains that the prosecutor improperly commented to the jury on the absence of witnesses to support the alibi. In the light of our conclusion concerning appellant's claim that he was prejudiced by the absence of these witnesses, it is clear that the prosecutor's comment, even if improper, was not prejudicial. Accordingly, we think it would unduly burden this opinion to describe the involved circumstances which give rise to the claim of impropriety.

(a) Under Rule 8(a), two or more offenses may be joined in one indictment if they are

> of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In the case before us, the forgery and uttering counts all state offenses "of the same character." The fraud count, charging that appellant drew on Fleming's checking account by cabling instead of by forging, is clearly "of a similar character."

■ Appellant complains that the robbery offense is of a wholly different nature from the others. We agree. But we think that the theft of the checkbook used hours later to commit the fraud and the forgeries is "connected together" with these latter offenses within the meaning of the rule. As we recently observed,

> [i]n determining whether offenses are based on "acts or transactions connected together," the predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once. Baker v. United States, 131 U.S. App.D.C. 958, p. 20, 401 F.2d 958, 971 (No. 21,154, decided August 9, 1968).

Here, the evidence of the fraud by wire, the forgeries, and the utterings comprises the bulk of the evidence which identifies appellant as the robber. It would almost certainly be admissible at a separate robbery trial.[10] By joining the robbery count, the indictment eliminated the need to prove substantially the same evidence twice over, thus realizing precisely the kind of economy envisaged by Rule 8(a).

■ (b) If proper joinder under Rule 8(a) would create undue prejudice at trial, the court has discretion under Rule 14 to order an election among counts or a severance.[11] We think the trial court's refusal to grant appellant's request for severance was not an abuse of that discretion.

■ Three kinds of prejudice warrant relief under Rule 14: 1) the jury may cumulate evidence of the separate crimes; 2) the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt; 3) the defendant may become "embarrassed or confounded" in presenting different defenses to the different charges. Drew v. United States, 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (1964). The first two dangers "are largely absent in a situation where evidence of each of the joined offenses would be admissible in a separate trial for the other." Baker v. United States, *supra*, 131 U.S.App.D.C. at 23, 401 F.2d at 974. Accordingly, the joinder did not prejudice defendant on the robbery charge, unless he was "embarrassed or confounded."

■ But appellant urges that he was indeed confounded in presenting his defense to the robbery charge in that he could not satisfactorily explain his possession of the stolen checks without thereby virtually admitting his guilt of the subsequent offenses. He says he should have been granted a separate trial on the robbery count at which he could have admitted possession of the checks

---

10. Evidence of the forgeries and utterings is clearly admissible to show possession of the stolen goods. Even if appellant were to concede possession, the evidence might well be admissible to show the specific intent to convert the stolen property to his own use which is an essential element of robbery, as it is of the included offense of grand larceny.

11. FED.R.CRIM.P. 14:
"Relief from Prejudicial Joinder. If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. * * *"

and then given an innocent—or at least different—explanation of how he got them. Presumably he would then not have testified at the trial of the other offenses.[12]

In some circumstances "prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses * * *." Cross v. United States, 118 U.S.App.D.C. 324, 326, 335 F.2d 987, 989 (1964). But the mere fact that the defendant moves to sever the counts does not establish such prejudice. Baker v. United States, *supra*, 131 U.S.App.D.C. at 25, 401 F.2d at 976. In *Baker*, we held that

> no need for a severance exists until the defendant makes a convincing showing both that he has important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration"

against the defendant's interest in having a free choice with respect to testifying. Id. at 26, 401 F.2d at 977.

In the instant case, however, appellant made no claim of testimonial embarrassment in support of his motion for separate trials under Rule 14.[13] He gave no indication that he wished to testify only on one count.[14] Instead, he presented a detailed alibi which, if believed, would have fully exonerated him on all counts. The result is that the record discloses no evidence of actual prejudice. And we are unwilling to rest a finding of prejudicial error on sheer speculation that appellant may have had a better alibi which he kept to himself.

Appellant also argues that he was prejudiced in defending against the fraud, forgery, and uttering charges by the joinder of the more serious robbery count. However, we do not consider whether a severance should have been granted on this ground, since any error here was harmless. The evidence against appellant on these charges was overwhelming. Moreover, appellant was given concurrent sentences for all the offenses of which he was convicted,[15] and we have recently held that concurrent sentences render even an improper joinder under Rule 8(a) harmless error.[16]

---

12. Appellant would not be heard to claim that he was entitled to separate trials so that he could present inconsistent defenses to the different charges.

13. Instead, he argued that he was prejudiced on the robbery count because the evidence on the Government's other counts was so overwhelming. Since we think the Government's evidence on the other counts would have been admissible at a separate trial on the robbery count, see note 10, *supra*, we find no prejudice on that ground.

14. *Cf.* Cross v. United States, 118 U.S. App.D.C. 324, 335 F.2d 987 (1964), where the defendant clearly indicated his desire to testify only as to one count and where, for other reasons, prejudice was apparent on the record, see Baker v. United States, 131 U.S.App.D.C. 26, 401 F.2d 977 (No. 21,151, decided August 9, 1968).

15. Appellant was sentenced concurrently to 5 to 15 years on the robbery count, 20 months to 5 years on the fraud count, and 1 to 3 years on each of the forgery and uttering counts. These sentences were also to run concurrently with the sentence for the housebreaking conviction which we reversed in Blunt v. United States, 128 U.S.App.D.C. 375, 389 F.2d 545 (1967).

16. Baker v. United States, *supra* note 16, 131 U.S.App.D.C. at 22, 401 F.2d at 973. See also Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). A stronger showing of prejudice is required for reversal under Rule 14 than for reversal under Rule 8, since a misjoinder is always error, whereas a refusal to grant a severance is error only if it is an abuse of discretion. *Id.* at 22, 401 F.2d at 973.

■ (4) We find no merit in appellant's complaint against the instruction on unexplained possession. The trial court said that the jury "may infer" defendant's guilt of the robbery charge from unexplained possession of recently stolen property. Appellant asserts this was "tantamount to a statement to the jury that they should find [him] * * guilty of robbery." His premise is apparently that since appellant in fact gave no explanation of his alleged possession of the victim's checks and papers, the jury might have thought it should find him guilty even if his alibi raised a reasonable doubt as to his presence at the time and place of the offenses. But the instructions made clear that the jury must first find beyond a reasonable doubt that a robbery had been committed and that the defendant was thereafter in exclusive possession of the stolen goods. The jury was told further that even if the defendant's explanation was not satisfactory, they were only *permitted*, not required, to find him guilty. Both before and after this instruction, the jury were also charged that they must acquit if they had a reasonable doubt as to any of the elements of the crime, including specifically appellant's presence at the time and place of the offenses. If these instructions made probable a finding of guilt, the reason is the weight of the evidence rather than any error in the instructions.[17]

■ (5) Relying on our opinion in Holmes v. United States, 127 U.S.App. D.C. 332, 383 F.2d 925 (1967), appellant argues that his conviction should be reversed because of the long delay in preparing the trial transcript for his use on appeal. His counsel did not receive the first volume until nearly six months after docketing of the appeal. He received the second volume a month later. And over three more months elapsed before the final volume was completed, apparently because the reporter temporarily·mislaid her notes.

In *Holmes,* we considered a motion filed before the transcript had been received and while the appellant was awaiting his appeal in jail. We were concerned that the violation of his statutory right to "reasonably prompt receipt" of a trial transcript might have resulted in an unnecessarily long imprisonment or in some collateral disadvantage. We did not reach the question of the remedy for such a violation only because the appellant was unconditionally released from jail before we decided the case and because in the circumstances we were satisfied that the issue was moot.

In the instant case, we do not reach the question of the appropriate remedy because we are satisfied that appellant was in no way prejudiced by the delay. Our grave concern over the potential injustices which may be worked by such delays is undiminished. But here, appellant has not yet served his minimum sentence. Since, as we have concluded, his conviction was otherwise valid, he has suffered no unnecessary detention or collateral disadvantage. And there is no suggestion that he was prejudiced in presenting his arguments on appeal when he finally received his day in this Court. Accordingly, we need not consider whether in other circumstances we would reverse a conviction for denial of the right to "reasonably prompt receipt of the transcript." Holmes v. United States, *supra,* 127 U.S.App.D.C. at 333, 383 F.2d at 926.

Affirmed.

---

17. Appellant's objection to this instruction was also predicated on his argument that the denial of his motion for severance was prejudicial to his defense to the robbery charge. Since he hypothesized that he could not explain his possession of the stolen goods without incriminating himself on the other charges, he thought it unfair to tell the jury they could convict him if he failed to explain possession. These two arguments stand or fall together. Since we reject the first, we also reject the second which depends on it.