MICHIGAN INJURED WORKERS, a Michigan Non-Profit corporation; Clarence Brock, Thomas C. Campbell, Sr., Patricia Carter, Joseph Cassell, Mary Johnson, Leonard Kiersey, Larry Kupsky, Kurt Olsen and Grace V. Taylor, individually and on behalf of all others similarly situated, Plaintiffs,

v.

James J. BLANCHARD, individually and in his capacity as Governor of the State of Michigan; Elizabeth Howe, individually and in her capacity as Director of the Michigan Department of Labor; Edward M. Welch, individually and in his capacity as Director of the Bureau of Workers' Compensation, Defendants.

Civ. A. No. G86–706 CA5.

United States District Court, W.D. Michigan, S.D.

Oct. 3, 1986.

Glotta, Rawlings & Skutt by Ronald D. Glotta, Richard M. Skutt, Detroit, Mich., for Michigan Injured Workers, Clarence Brock and Leonard Kiersey.

Goodman, Eden, Millender & Bedrosian by Roderick V. MacNeal, Diane M. Kwitoski, Detroit, Mich., for Michigan Injured Workers and Grace V. Taylor.

James A. Tanielian, St. Clair Shores, Mich., for Thomas C. Campbell, Sr.

Frank J. Kelley, Atty. Gen. by R. Philip Brown, Asst. Atty. Gen., Lansing, Mich., for defendants.

Levin, Levin, Garvett & Dill by Erwin B. Ellmann, Southfield, Mich., for amicus Parties.

Jordan Rossen, Gen. Counsel by Ralph O. Jones, Assoc. Gen. Counsel, International Union, UAW, Detroit, Mich., for International Union, UAW.

Kelman, Loria, Downing, Schneider & Simpson by Roger G. Will, Detroit, Mich., for Patricia Carter.

David J. Cooper, Tecumseh, Mich., for Joseph Cassell.

Levine, Benjamin, Tushman, Bratt, Jerris & Stein by Lucinda Keils, Detroit, Mich., for Mary Johnson.

Radner, Eisenberg & Feldman by Judythe E. Johnson, Detroit, Mich., for Larry Kupsky.

Meklir, Schreier, Nolish & Friedman by Jack A. Nolish, Southfield, Mich., for Kurt Olsen.

Carl R. Edwards, Herman J. Anderson, Detroit, Mich., Sablich, Ryan, Clinton & Kolkowski by Joseph F. Sablich, Lansing, Mich., Bockoff & Zamler by Mark I. Mellen, Southfield, Mich., of counsel, for plaintiffs.

## OPINION

HILLMAN, Chief Judge.

This matter is before this court on plaintiffs' Motion for a Preliminary Injunction and Defendants' Motion to Dismiss. In the underlying case plaintiffs have challenged the constitutionality of the Michigan Workers' Disability Compensation Act of 1969, as amended (hereinafter, the Act), M.C.L.A. § 418.101, *et seq.;* M.S.A. § 17.237(101) et seq., as applied to them. In particular they claim that recent amendments to the Act (1985 P.A. 103) have worked to deny them access to any judicial or quasijudicial forum to determine their entitlement to remedies or benefits for work related injuries. Plaintiffs seek to strike down the provision which makes the remedies provided in the Act the employee's exclusive remedy against the employer. In the alternative, plaintiffs seek to have two provisions of the 1985 amendments to the Act, M.C.L.A. §§ 418.206 and 418.213, struck down.

Defendants have moved for the dismissal of the complaint pursuant to both Fed.R. Civ.P. 12(b)(1), for lack of jurisdiction, and Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. In support of their motion defendants have put forth arguments based on abstention, sovereign immunity, this court's lack of jurisdiction over certain state law claims, and the adequacy of certain state law remedies.

The court has permitted amicus briefs, supporting plaintiffs' claims, to be filed by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, the Workers' Compensation Bureau Administrative Law Judges and the Workers' Compensation Section of the Michigan Bar.

## FACTS

Plaintiffs, Michigan Injured Workers, and nine individuals have moved this court for a preliminary injunction pursuant to Rule 65(a) Fed.R.Civ.P. Specifically plaintiffs request that defendants be enjoined from the enforcement of Sections 206 and 213 of 1985 P.A. 103 (M.C.L.A. §§ 418.206 and 418.213) during the pendency of this litigation. Section 206(1) eliminates the position of Hearing Referee as of March 31, 1987. Section 206(2) proscribes the hearing of contested cases by anyone other than magistrates if such cases are filed after March 31, 1986. Section 213 creates the power for assigning and hearing contested cases in an independent Board of Magistrates.

Plaintiffs represent a group of individuals who have filed Petitions for Hearing with the Bureau of Workers' Compensation on or after April 1, 1986. Additionally, plaintiffs Carter, Cassell, Johnson, Olsen and Taylor represent individuals who are entitled to expedited hearings because their benefits were terminated by their employers. Plaintiffs have, in addition, sought to have the case certified as a class action. The court has not ruled on that motion.

Due primarily to the inordinate delay in the appeal process the workers' compensation law in Michigan was drastically revised in 1985. Among other major changes, the new law abolished the Civil Service position of Hearing Referee as of March 31, 1987; removed the power of the Director of the Bureau of Workers' Disability Compensation to assign cases; created a politically appointed Board of Magistrates vested with the power to assign and hear contested cases (M.C.L.A. § 418.213); and for cases filed after March 31, 1986 directed that they could be heard only by newly appointed magistrates (M.C.L.A. § 418.-206).

The Civil Service Commission and the Administrative Law Judges (Hearing Referees) filed suit in state court challenging the constitutionality of Section 213. On December 1, 1985 the Ingham County Circuit Court ruled that the Section was unconstitutional and enjoined its enforcement. Subsequently, the Michigan Supreme Court overruled the Circuit Court and the injunction was dissolved.

Since April 1, 1986 cases filed with the Bureau have not been assigned for hearing. Although the Act required that mag-

istrates be appointed by March 31, 1986, no funds were appropriated for that purpose until June 30, 1986. No cases filed since March 31, 1986 have been assigned for hearing. Currently no one is making case assignments for hearing. No magistrates have been appointed. Defendants do not anticipate having magistrates until 1987 at the earliest.

Since April 1, 1986, over 7,000 cases have been filed which have not been assigned, not processed and for all practical purposes are at a complete standstill in Lansing. It is anticipated by the end of the 1986 there may be as many as 16,000—17,000 new cases filed. Cases continue to be filed at the rate of 1,500 per month. Each case represents an individual who claims to have been injured while at work. At the present those individuals have been denied by Michigan law all access to any judicial or quasi-judicial body to hear their claims. The potential financial loss and suffering by the families involved is incalculable.

This chaotic situation could well last for many months. It has already been at a dead halt for cases filed since April 1, 1986. When and if magistrates are appointed, they will need training before assuming that responsibility. When they do assume their responsibilities, whenever that may be, they will be confronted with a backlog of perhaps as many as 20,000 cases. For injured workers the resulting quagmire could result in delays of several years before receiving the "expedited" remedies promised by the Act.

For political, legislative and administrative reasons plus state court legal challenges not the responsibility of any of the parties to this suit, plaintiffs will unquestionably be denied the opportunity for any resolution of their claims for workers' compensation, whether by Compromise, Redemption, Liability, Voluntary Payment or Decision for many more months and possibly years to come. Faced with this bureaucratic standstill and intolerable situation, plaintiffs seek relief in this court.

## JURISDICTION OF THE COURT

Plaintiffs have invoked the jurisdiction of this court pursuant to 42 U.S.C. § 1983, by way of 28 U.S.C. §§ 1331 and 1343(a)(3).

## ABSTENTION

■ Defendants first argue that principles of abstention require that this action be dismissed. Relying on the court's decision in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942), they urge that the existence in Michigan of a complex mechanism for deciding worker's compensation claims, including a specialized forum for deciding these claims, militates against this court's intervention. In *Burford* the Court listed two factors which justified abstention: 1) the presence of a complex state regulatory system, governing a subject matter in which the state had a great interest, which would be disrupted by federal court review; and 2) the existence of a state created forum with specialized competence in the area being litigated. *Id.*, 319 U.S. at 327, 332–33, 63 S.Ct. at 1104, 1106–07.

*Burford* was a suit to enjoin the enforcement of an administrative order of a Texas state commission permitting the drilling of certain oil wells. While the action was before the federal court based on both diversity and federal question jurisdiction, it was being asked primarily to interpret and apply Texas law. In addition, the regulation of drilling in oil fields is a very complicated matter. *Id.*, 319 U.S. at 318–327, 63 S.Ct. at 1099–1104. The court was concerned that the past and continued exercise of federal equity jurisdiction in these matters would result in a chaotic state of Texas law. The court held that "under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.*, 319 U.S. at 334, 63 S.Ct. at 1107. In *Zablocki v. Redhail*, 434 U.S. 374, 380, 98 S.Ct. 673, 678, 54 L.Ed.2d 618 (1977), plaintiff challenged a Wisconsin statute which provided that residents who had minor children not in the individual's custody but for whom the individual had court-ordered support responsibilities, in order to marry had to re-

ceive court permission. There the court said that

> [u]nlike *Burford,* however, this case does not involve complex issues of state law, resolution of which would be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' *Colorado River Water District v. United States,* 424 U.S. 800, 814–815 [96 S.Ct. 1236, 1244–1245, 47 L.Ed.2d 483] (1976). And there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of state policy.

It is also noted that "[t]he *Burford* doctrine remains sufficiently imprecise that there is room for difference of opinion about its application in marginal cases," 17 Wright, Miller & Cooper, Jurisdiction § 4244, p. 489. I am satisfied abstention in the present case is clearly unwarranted.

Here plaintiffs do in fact make a challenge which involves a relatively complex state system. However, they do not challenge decisions made under a system which the state has relegated to special tribunals to resolve. Rather they challenge the application of that system and argue that it denies them basic constitutional rights. This court is not being asked to interpret and apply Michigan workers' compensation law which has been delegated by the state to a special tribunal. Rather, it is being asked to look at the entire system and decide whether, as applied to the present plaintiffs, it deprives them of important constitutional rights. The role which this court is asked to take does not intersect or conflict with the role which the hearing referees perform in workers' compensation hearings.

Defendants also argue that the equitable doctrine expressed in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), precludes this court from hearing this claim. *Younger* provides that a federal court can not interfere in an impending state criminal proceeding absent very special circumstances. *Younger's* progeny have extended this principle to some civil and administrative proceedings. Defendant's contend that because a decision in the instant action could invalidate three provisions of the worker's compensation laws thus interfering with the operation of that system this court should refrain from deciding this case under the authority of *Younger.*

*Younger* and its progeny deal with federal court intervention with ongoing proceedings in state adjudicative bodies. Those cases in no way state a federal court should not act when it is not interfering with such a proceeding. Defendants have failed to establish that such a proceeding currently exists in Michigan.

Defendants also argue that because a decision in this case could remove the issue of the constitutionality of a state statute from the state courts this court should abstain. Defendants have failed however to establish that there currently exists a state court proceeding where the constitutional issue raised before this court is being litigated.

ELEVENTH AMENDMENT

Defendant's also claim this case should be dismissed on Eleventh Amendment grounds. They argue that since this case is against state officers acting in their official capacity, this suit in reality is against the state and is barred. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), clearly provides that when state officials act unconstitutionally they are stripped of their immunity and the Eleventh Amendment does not serve to shield them. *Green v. Mansour,* —— U.S. ——, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Pennhurst v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). If plaintiffs succeed in their present action they will have established that defendants have acted in a manner contrary to the U.S. Constitution and the defendants will be stripped of any protection which the Eleventh Amendment provides.

RIGHTS BASED ON STATE LAW

Defendants also argue that as the rights plaintiffs seek to vindicate are based on

state law this case must be dismissed. Defendants erroneously characterize the rights which plaintiffs seek to vindicate. Plaintiffs claim no right to receive workers' compensation benefits. They claim a federal constitutional right, predicated on the First and Fourteenth Amendments, to petition the government for redress. Presently the State of Michigan denies plaintiffs any forum in which to seek such redress.

As indicated by the foregoing discussion, defendants have failed to establish this court lacks jurisdiction or, that it should abstain. Therefore, defendants motion to dismiss under Fed.R.Civ.P. 12(b)(1) is denied.

### DEFENDANTS' 12(b)(6) MOTION

■ Through their motion pursuant to Fed.R.Civ.P. 12(b)(6) defendants move to have the due process count of plaintiffs' complaint dismissed for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss brought pursuant to Rule 12(b)(6) the complaint is to be construed liberally in favor of the party opposing the motion, *Davis H. Elliot Co. v. Caribbean Utilities Co. Ltd.*, 513 F.2d 1176, 1182 (6th Cir.1975), because "a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1956).

Defendants' first argument is that because plaintiffs have an adequate state law remedy their due process claims must be dismissed. In support they cite *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In both cases plaintiffs claimed that since the state had deprived them of "life, liberty or property" without a pre-deprivation hearing it had deprived them of due process under the Fourteenth Amendment. In each case the state provided some post-deprivation remedy. What both *Parratt* and *Hudson* held was that in some circumstances a post-deprivation remedy

may be adequate process for purposes of the due process clause. In both *Parratt* and *Hudson* the deprivation was caused by the independent actions of individual actors clothed with state authority and the Court specifically noted, in approving of the use of post-deprivation remedies, that the deprivation was not the result of established state policy. This is clearly not the case here. In the present action plaintiffs do not complain about the timing of the hearing in relationship to the deprivation of "life, liberty or property". They complain that their total inability to have timely access to a hearing process is the deprivation. In *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1964), Justice Stewart observed that "[a] fundamental requirement of due process is 'the opportunity to be heard.' *Grannis v. Ordean*, 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363]. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Id.*, 380 U.S. at 552, 85 S.Ct. 1187, 14 L.Ed.2d 62.

Defendants next argue that the denial of access to a judicial system has lasted at most six months, is only "temporary" and is hence not a due process violation. Courts have identified various lengths of time which they have determined constitute unconstitutional delay in gaining access to an adjudicatory system and a hearing. Most recently the Ninth Circuit held that a three and one half month suspension, for fiscal reasons, of the right to a civil jury trial was unconstitutional. *Armster v. United States District Court*, 792 F.2d 1423 (1986). See also *United States v. Pratt*, 645 F.2d 89 (1st Cir.), *cert denied*, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); *Kinard v. United States*, 418 F.2d 453 (D.C.Cir.1969); *Blunt v. United States*, 404 F.2d 1283 (D.C.Cir.1968), *cert denied*, 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969).

It is evident that plaintiffs could prove "facts in support of [their] claim which would entitle [them] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. Consequently, it would be inappropriate for this

court to grant defendants' motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION UNDER FED.R.CIV.P. 65(a)

As I have found that this court does have jurisdiction over this matter and that plaintiffs have stated a claim upon which relief can be granted, I now consider their motion for a preliminary injunction.

In *Friendship Materials, Inc. v. Michigan Brick, Inc,* 679 F.2d 100 (6th Cir.1982), the court set forth four factors which must be considered in evaluating a request for a preliminary injunction:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury:

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Id.,* 679 F.2d at 102. In addition, the alternate, or "balance of hardships" test allows the court some flexibility. A district court can

grant a preliminary injunction even where the plaintiff fails to show a strong or substantial probability of success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.

*Id.,* 679 F.2d at 105. This appears to be an appropriate point at which to evaluate these four criteria.

### LIKELIHOOD OF SUCCESS

In *Metropolitan Detroit Plumbing & Mechanical Contractors Association v. H.E.W.,* 418 F.Supp. 585 (E.D.Mich.1976), the court held that "the likelihood of success that need be shown [before the issuance of a preliminary injunction] will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Id.,* 418 F.Supp. at 586, *quoted with approval, Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–538 (6th Cir. 1978). Here, as shown below, the degree of injury which plaintiffs will suffer absent the issuance of an injunction is great.

While it is difficult to evaluate the likelihood of success at such an early stage in litigation, where, as is the case here, plaintiffs have been so clearly denied access to any judicial or quasi-judicial forum, it seems likely that they will prevail.

### IRREPARABLE INJURY

If the present situation continues, Edward M. Welch, Director of the Michigan Bureau of Workers' Disability Compensation, estimates that by December 31, 1986 M.C.L.A. §§ 418.131 and 418.206 will combine to bar the plaintiffs, and roughly 16,-000 other workers injured in Michigan, from seeking any adjudicatory relief for injuries suffered in the work place. (Deposition of Edward M. Welch, p. 24.) It is axiomatic that some of the people who can't work because of an injury, and who aren't receiving any compensation for that injury are going to have problems buying necessities, paying bills and seeking medical care. The inability to secure medical care has obvious serious implications for these people. For example, two of the affidavits attached to plaintiffs' Motion for a Preliminary Injunction recite that a delay in receiving medical care can lead to permanent physical damage.

In his affidavit Donald Lawrence Newman, M.D., a specialist in Family Practice and Occupational Medicine, states that "delays or denial of treatment can and often do aggravate, accelerate or worsen the underlying disease processes ... [This] can result in a worsening of a condition to the point that it is no longer remedial or treatable resulting in increased morbidity and/or mortality." Exhibit 1, plaintiffs' Brief in Support of Motion for a Preliminary Injunction, p. 2. In one example he notes that

in soft-support tissue injuries, which are very common in industrial settings, the

failure of treatment can result in permanent impairment with scaring and resultant disability ... In soft-support tissue back injuries, a lack of early treatment can result in the muscle damage leading to severe arthritis, ruptured disks and nerve damage.

*Id.*, at p. 3. In another example Dr. Newman notes that delays in diagnosis and treatment of injuries due to toxic exposure can result in "permanent, untreatable damage and a resulting permanent and untreatable injury." *Id.*

In another affidavit, Michael George Sperl, M.D., a specialist in Physical Medicine and Rehabilitation, arrives at some of the same conclusions. He also observes that "delays in treatment and in return to work that are caused by litigation delays are a factor in the worsening of medical conditions." Exhibit 2, plaintiffs' Brief in Support of Motion for a Preliminary Injunction, p. 3. One of the plaintiffs has offered his own affidavit detailing his injuries, financial troubles a nd need for medical care which is unavailable because of the lack of funds and an inability to obtain access to an appropriate judicial body. Exhibit 3, plaintiffs' Brief in Support of Motion for Preliminary Injunction.

This court also notes, as has the Michigan Legislature, the special circumstances of the subclass of plaintiffs who have had their sustaining benefits terminated.[1] This is a group of people who at one point have been determined by the employer or the insurance carrier to be disabled and entitled to benefits. The termination of the sustaining benefits without the opportunity for a prompt hearing obviously has a strong potential for an irreparable impact on the injured worker who is depending on these benefits for basic survival and access to continued medical care.

Various estimates have been given as to the amount of time during which workers injured in Michigan will have been denied access to any judicial or quasi-judicial system which could provide them with redress for injuries suffered in the workplace. These estimates have ranged from nine months (deposition of Edward M. Walsh, p. 86) to seventeen months due to the need to train the new magistrates and give them experience in deciding these types of cases (plaintiffs' counsel at oral argument). Delays such as these make clear that the extent of harm which will be suffered by some will be great.

HARM TO OTHERS:

Defendants have advised the court that if the relief requested by plaintiffs is granted in full they would be unable to continue the process of implementing the new workers' compensation system put into effect by 1985 P.A. 103. At oral argument, however, defendants' counsel, although arguing this court should take no action, stated that if action was taken by the court a more limited injunction could be fashioned which would meet the alleged needs of the plaintiffs while allowing the State to continue with the implementation of the new system. Defendants have not however articulated what harm, if any, a carefully tailored preliminary injunction would cause themselves or any other persons. Twice the Michigan Department of Labor and the Bureau of Workers' Disability Compensation have taken the position before the Michigan legislature that an extension of the implementation dates contained in M.C.L.A. § 418.206 was necessary to avoid working a considerable hardship on both employers and employees in Michigan. Deposition of Edward M. Welch, pp. 28–29.

PUBLIC INTEREST:

A carefully tailored preliminary injunction which would allow for the resolution of new workers' compensation cases would clearly be in the public interest. It would provide for immediate resolution of a large

---

1. M.C.L.A. § 418.205 was amended by 1985 P.A. 103 to provide that petitions filed in these cases were to take precedence over all others, and that a hearing must be held on them within 60 days of the filing of the petition. While the record is not totally clear, it appears that at least some of these cases are not presently being heard because M.C.L.A. § 418.206(2) prevents them from being assigned to Hearing Referees.

number of disputes which are currently pending before the Workers' Disability Compensation Board. It would also eliminate some of the backlog which would exist when the new system of magistrates eventually begins to function thereby further limiting the number of people who will be adversely affected by the transition to the new system of resolving disputes over benefits. Originally the legislature provided for a period of transition during which some or most of the backlog currently existing in the system could be eliminated. Various state court litigation upset that plan. A carefully tailored injunction would serve to help fulfill that goal.

In addition, the people of the State of Michigan have decided, through their elected representatives, that a system of providing rapid benefits to persons who are injured in the workplace is important to the state. An appropriate preliminary injunction would further that goal.

Finally, such an injunction would permit the thousands of people who are, on a daily basis, being denied access to a judicial or quasi-judicial system for seeking redress and compensation for injuries suffered in the workplace, to seek their needed relief. It is clear that an appropriate injunction would be in the public interest.

For the aforementioned reasons I believe that a preliminary injunction should issue in this case.

## CONCLUSION

It is difficult for the court to think of any right that is more important in a free society than the right of a citizen to have immediate access to the judicial system. At the time the Workers' Compensation Law passed a bargain, in effect, was struck. Injured workers were told they no longer could file their claims in courts of law. Instead, they were told their claims would be heard in a quasi-judicial system which would be quicker, less formal and unburdened from the many technical rules and procedures often found in court proceedings. In addition, the injured workers were told that their claims would be heard by independent referees, highly skilled in the complexities of workers' compensation disputes. That bargain has now been breached. The state has blocked the workers in both directions. They are prohibited by law from filing their claims in the state courts, and now with claims filed subsequent to March 31, 1986, find themselves barred by law from having those claims assigned, heard and decided within the workers' compensation system. This is a clear, unwarranted constitutional violation. The fact that this violation may be only a temporary deprivation makes it no less a constitutional violation. The possibility of future changed conditions cannot affect my decision. The period since March 31, 1986, already constitutes a significant period of time in which the affected workers' rights have been unconstitutionally denied. I am satisfied that temporarily enjoining the enforcement of M.C.L.A. § 418.206(2), which provides that workers' compensation cases filed after March 31, 1986 can only be heard by the as-yet unappointed magistrates, should immediately provide adequate relief to plaintiffs. Experienced Hearing Referees are currently in place and available for immediate assignment of cases. I, therefore find that in order to alleviate plaintiffs of the burden which is presently imposed upon them by the failure to implement 1985 P.A. 103, a preliminary injunction shall forthwith be granted against the enforcement of 1985 P.A. 103, § 206(2); M.C.L.A. § 418.206(2).

I see no need at this time to enjoin enforcement of 1985 P.A. 103, § 206(1); M.C.L.A. § 418.206(1), which provides that the position of Hearing Referee shall be abolished as of March 31, 1987. Such action would be premature. Should the new act be vigorously and promptly implemented, newly appointed magistrates may be in place and functioning effectively by March 31, 1987. This matter may be brought to the attention of the court by appropriate motion at a later date should the parties believe that such action is necessary.

## PRELIMINARY INJUNCTION

In accordance with the opinion filed this date,

IT IS ORDERED that defendants are forthwith enjoined from enforcing the provision of 1985 P.A. 103, Section 206(2); MCLA § 418.206(2); MSA § 17.237(206)(2) until final judgment has been entered in this matter, or until further order of the court.