The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,

v.

Edmund J. OLSEN, Defendant-Appellant.

Crim. No. 84F–75 (Undocketed).

District Court of Guam,
Appellate Division.

Oct. 20, 1978.

Trapp, Gayle, Teker, Hammer & Lacy by Howard G. Trapp, Agana, Guam, for appellant.

Nancy Nye, Asst. Atty. Gen., Agana, Guam, for appellee.

OPINION

Before DUENAS and HILL, District Judges, and BURNETT, Designated Judge.

IRVING HILL, District Judge:

In this case we consider the effect of a very long delay in the preparation of a reporter's transcript of the trial, upon an appeal of a criminal conviction in the Superior Court of Guam.

Defendant Olsen was convicted in that court on September 11, 1975, of burglary in the second degree (2 counts), assault with a deadly weapon (1 count), and receiving stolen property (1 count). Sentence was pronounced on October 28, 1975. Concurrent sentences were imposed as follows: for each of the burglaries, 8 years; for the assault, 10 years; and for receiving stolen property, 2 years. A notice of appeal was filed the same day.

By order dated March 22, 1976, the Superior Court of Guam granted Olsen leave to appeal in forma pauperis and ordered that a transcript be provided to him at public expense. No explanation appears from the file for the delay of several months between the filing of the notice of appeal and the

issuance of the order for the preparation of a transcript on March 22, 1976.

Olsen was at large on bail at the time of his trial, although he had been incarcerated for a period of about a month after his arrest before he made bail. That period will be credited to his sentence in this case. Upon his conviction, Olsen's bail was set aside and he was again remanded to custody. He remained in custody serving the above mentioned sentences from September 11, 1975, until August 27, 1976, when he was again admitted to bail. He has remained at liberty on said bail until now. He has thus already served more than 12½ months in custody on the sentences imposed in the instant case.[1]

On March 31, 1978, more than two years after the order for the production of the transcript was issued, Olsen's counsel filed in this court a motion that this court reverse the judgment of conviction with instructions to the Superior Court to enter a judgment of acquittal because of the failure to provide the trial transcript with reasonable promptness. That motion is the subject of the instant proceeding. The file reveals no other effort by Olsen's counsel in the trial court, to obtain the transcript following his securing the order of March 22, 1976, for its production. A motion in an appellate court of the type employed here, which seeks a reversal of the conviction for trial court omissions or delays during the appeal period, is not expressly provided for in either the Federal Rules of Criminal Procedure or the Federal Rules of Appellate Procedure. However, there is some precedent for such a motion. A motion for reversal, made apparently in the first instance in the appellate court and based on delay in delivery of the trial transcript, was considered by the D. C. Circuit in *Holmes v. United States,* 127 U.S.App.D.C. 332, 383 F.2d 925 (1967).[2]

The Attorney General of Guam has raised no question in his papers or at the argument, as to the propriety of our entertaining the instant motion or as to Olsen's failure to seek relief from the trial court. The Attorney General's papers assume that we have jurisdiction to entertain the motion. We will likewise assume that jurisdiction exists but are careful to point out that that question has not been briefed before us.[3]

---

1. Olsen became the victim of the uncertainty prevailing in Guam in 1975 as to whether criminal appeals from the Superior Court of Guam were properly entertained by the District Court of Guam, Appellate Division (this court) or by the Supreme Court of Guam. Olsen's counsel fortunately filed his notice of appeal in both courts. The District Court of Guam (with a single judge acting) dismissed the appeal on the ground that the Supreme Court of Guam was the only one with proper appellate jurisdiction. The dismissal was based on an opinion of a panel of the Ninth Circuit so holding, *Agana Bay Development Co. (Hong Kong) Ltd. v. Supreme Court of Guam,* 529 F.2d 952 (9th Cir. 1976) (2–1 decision). Olsen's counsel secured an en banc hearing by the Circuit and the panel's decision was reversed. The Circuit held that this court is the only one having jurisdiction to hear criminal appeals from the Superior Court of Guam. *People of Territory of Guam v. Olsen,* 540 F.2d 1011 (9th Cir. 1976) (en banc). That decision was affirmed by the U. S. Supreme Court, *sub nom. Territory of Guam v. Olsen,* 431 U.S. 195, 97 S.Ct. 1774, 52 L.Ed.2d 250 (1977).

This history is recited not because we believe it to be relevant but as a matter of interest only. The order of the Superior Court of Guam of March 22, 1976, requiring the production of a trial transcript remained in effect and unchanged throughout the various jurisdictional appeals mentioned above. The jurisdictional uncertainty is not claimed, either by the Attorney General or the court reporter, to have played any role in delaying the preparation of Olsen's trial transcript.

2. The opinion in *Holmes* unfortunately did not describe the type of procedure used in that case; but the procedure involved in *Holmes* was later described in a subsequent opinion written by the same judge. *Blunt v. United States,* 131 U.S.App.D.C. 306, 313, 404 F.2d 1283, 1290 (1968). He characterized it as a motion made in the appellate court and it is obvious that the motion was one for reversal of the conviction.

3. A strong argument could be made that one seeking the ultimate sanction of reversal of a conviction for failure of the trial court's reporter to provide a transcript within a reasonable time, should be required to initiate the proceeding in the trial court. In the federal practice, when seeking reversal of a conviction for failure to observe constitutional standards during the trial, one must start in the trial court by a motion under 28 U.S.C. § 2255 which reaches the appellate court only after the trial court has acted.

The only explanation or justification for the delay of more than two years in the preparation of the instant transcript, is contained in an affidavit of Lolita C. Toves, the Court Reporter at the trial, filed on April 13, 1978. Ms. Toves first states therein that as of April 13, 1978, she is "at present" engaged in the preparation of the transcript. Parenthetically, one wonders if there is not some cause-and-effect relationship between the filing of the instant motion on March 31, 1978, and the revelation on April 13, 1978, after more than two long years, that the transcript was finally being prepared. The affidavit then goes on to state that the delay in providing the instant transcript was caused by the fact that Ms. Toves had been serving continuously in the court of Judge Raker and that his calendars were heavy, and, moreover, the lack of reporters in the Superior Court of Guam had resulted in her having to serve as reporter for other judges. She goes on to state that the delay was further caused by her "transcription of three murder cases demanding priority". Neither Ms. Toves nor the Attorney General cite any statute, court rule or court order giving priority to any other criminal appeal over the instant one. Nor do they claim that any of the three murder cases involved an order for a transcript which antedated the order of March 22, 1976, for the production of Olsen's transcript.

The instant motion, as stated, was filed in March of 1978. Because of the difficulty of convening our three-judge court, the matter was not set for hearing until May 26, 1978. *Mirabile dictu!* On May 24, 1978, two days before our hearing, the instant transcript was finished, filed and delivered to defense counsel. Again, parenthetically, one wonders when the transcript would have been completed in the absence of this motion and its being calendared for hearing before us.

We must and do conclude that the preparation of the instant transcript has been unreasonably delayed and no good cause or excuse for the delay has been shown.

We come now to a discussion of the law. Unfortunately, there are very few reported cases that deal with the subject of delay in the preparation of a trial transcript and we have found none which orders a reversal on that account. But the importance of prompt preparation of a trial transcript as an absolutely necessary part of the right of appeal has been discussed by the Supreme Court and the Circuit Courts.

In *Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), Mr. Justice Goldberg said in a concurring opinion:

> "As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eye may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law. Anything short of a complete transcript is incompatible with effective appellate advocacy." 375 U.S. at 288, 84 S.Ct. at 431.

In *Holmes v. United States, supra,* the D. C. Circuit said:

> "We think it clear, and the Government does not argue otherwise, that appellant had a statutory right to a trial transcript, 28 U.S.C. § 1915, and that such right necessarily included reasonably prompt receipt of the transcript in order that prosecution of the appeal for which it is furnished would not be thwarted. . . Delay in the preparation of transcripts is a problem we face with disturbing frequency. We know from our discussions with district judges that there is a serious shortage of reporters and that they now labor under unusually heavy workloads. . . . The record does not show why this particular transcript was delayed, nor do we think it necessary to search for the cause. More than likely, delay in preparation of transcripts is an amalgam of many factors. But where we deal with a statutory right, *even the most plausible of reasons cannot serve to excuse out-*

*right denial of that right."* Emphasis supplied.

See to the same effect, *MacCollom v. United States,* 511 F.2d 1116 (9th Cir. 1974).

Neither in his brief nor in his oral argument does the Attorney General take express issue with Olsen's claim that there was an unreasonable delay in the preparation of the trial transcript in this case. Nor does the Attorney General make any claim that any part of that delay is attributable to the Defendant or his counsel. The Attorney General resists the motion and the relief sought on only two grounds:

1. The Defendant or his counsel had a duty to take affirmative action of some sort, such as the filing of a mandamus petition, to compel the earlier production of the transcript if he was dissatisfied with the delay, and, having failed to do anything, cannot seek reversal of the conviction for that reason.

2. The Defendant must show substantial prejudice from the delay and none can be shown in this case because the Defendant has remained at large on bail for most of the period after March 22, 1976, when the transcript was ordered.

We believe that neither contention has merit.

■ The claim that Defendant or his counsel should have taken some earlier affirmative action on their own before making this motion, is not persuasive. Once an indigent defendant has obtained a court order for the production of the trial transcript, he has, in our view, done everything he can or should be expected to do in this regard and and he has a right to rely on the prompt production of the transcript without his being required to do anything more.[4]

On the issue of prejudice, the Attorney General discusses some cases decided by the District of Columbia Circuit. That Circuit has produced the three major appellate cases in the federal jurisprudence which discuss delay in the production of criminal trial transcripts.[5] The three cases merit some detailed analysis.

In the first case, *Holmes v. United States, supra* the Defendant, appearing in forma pauperis with appointed counsel, was convicted of destruction of private property, a misdemeanor. Leave to appeal in forma pauperis was granted on March 7, 1966, at which time a transcript was ordered to be prepared at government expense. The trial judge had imposed a six-month sentence and the Defendant remained in jail on that sentence because he could not afford a bail bond. The transcript was delivered July 8, 1966, four months and one day after the order to produce it. On July 11, 1966, appellant was released from jail without condition, having served his entire sentence. The matter was heard by the appellate court on September 16, 1966. The opinion is not clear as to whether alleged errors in the trial were ever argued before the appellate court. The appellant court opinion is confined to the decision of a motion for reversal made by defense counsel apparently based solely on the delay in furnishing the transcript.

Using the language quoted above, the D. C. Circuit emphasized the seriousness of any

---

4. The Attorney General may not be powerless to compel the reporter to produce the transcript when it appears that the delay may be reaching unreasonable proportions. *Cf. United States v. Metzger,* 133 F.2d 82 (C.C.A.9th 1943), in which a writ of mandate was granted directing the court reporter to produce a transcript without the additional compensation which the reporter claimed to be due. While the Attorney General may have this possible remedy for a reporter's delay and employ it at his discretion, we feel that there is no basis for holding that defense counsel must employ the same remedy as a prerequisite to obtaining relief.

5. The only other federal appellate case discussing delay in the preparation of a trial transcript is *United States v. Amos,* 566 F.2d 899 (4th Cir. 1977). That perfunctory *per curiam* opinion states no facts on this issue. It merely observes that the Defendant, who claimed that an unspecified delay in transcript preparation had violated due process, had shown no prejudice as a result of the unspecified delay.

lengthy delay of the production of a trial transcript. But the court denied the motion for reversal on the ground that the matter was moot. Nothing is said in the opinion about prejudice or the need to show prejudice to overcome an unreasonable delay in the production of a transcript. Instead, the D. C. Circuit observed that when a Defendant has served his entire sentence with no further hold on him, his appeal (and, presumptively, his claim of being delayed in presenting his appeal) is "not justiciable" unless he is able to show some "collateral disadvantage which [he] might reasonably be expected to incur by virtue of the conviction." 127 U.S.App.D.C. at 335, 383 F.2d at 927. The court found that no collateral disadvantage was shown in the case because Defendant Holmes had suffered 14 valid misdemeanor convictions before the instant one, including one previous conviction for the identical offense.

*Holmes,* therefore, is a holding of mootness and is no authority on the question of prejudice.

The next case in this line is *Blunt v. United States,* 131 U.S.App.D.C. 306, 404 F.2d 1283 (1968). In *Blunt,* Defendant was in forma pauperis appearing through appointed counsel during both the trial and the appeal. He was convicted on all 8 counts of an indictment charging robbery, fraud by wire and forgery. He was sentenced to concurrent sentences, the longest of which was an indeterminate sentence of 5 to 15 years. On appeal, his counsel argued many different grounds of alleged error in the trial. Also included in the appeal was the claim that the conviction should be reversed because of the long delay in preparing the trial transcript. The facts were that defense counsel did not receive the first volume of the transcript until about 6 months after the appeal was docketed and the last of the 3 volumes was not delivered until 10 months after the docketing because the reporter had temporarily mislaid her notes. The Defendant was apparently in jail throughout the postconviction period. The Court of Appeals first, point by point, rejected every substantive ground of appeal. It then rejected the request for reversal based on delay in the preparation of the transcript on the ground that, since the conviction was otherwise valid and the Defendant had not yet served his minimum sentence, the Defendant had "suffered no unnecessary detention or collateral disadvantage", 131 U.S.App.D.C. at 313, 404 F.2d at 1290. The court went on to say that the delay had not prejudiced the Defendant in presenting his arguments on appeal because he had had his appeal and had argued all of his contentions of error. Thus, the Court found that the Defendant was not in any way prejudiced by the delay.

The *Blunt* opinion can be viewed in various ways. It can be read as a holding that no reversal will be granted because of delay in the preparation of a trial transcript, no matter how long the delay has been, unless the Defendant can show some type of prejudice resulting from the delay. If so read, the essential holding is that a delay of 10 months in the preparation of a transcript followed by an immediate appeal thereafter in which no error was discovered in the conviction, is not a sufficient showing of prejudice, especially since the Defendant whose conviction was error-free had not yet served the minimum term at the time the appeal was argued and decided. *Blunt* can also be viewed as a holding that a 10 month delay is not an unreasonable delay under the specific facts of that case. However the *Blunt* opinion is read, the case is obviously distinguishable on its facts from the instant case.

The third D. C. Circuit opinion in order is *Kinard v. United States,* 135 U.S.App.D.C. 237, 418 F.2d 453 (1969). Kinard, apparently a young man, was convicted of assault with a deadly weapon. He too was in forma pauperis at both the trial and on appeal. He was sentenced to an indeterminate jail term of from one to three years. In the appeal, counsel argued a number of alleged errors at the trial. There was also urged on appeal the question of delay in obtaining the trial transcript. The transcript was ordered to be produced on December 21, 1967, and it was delivered on May 23, 1968. The delay was thus five months and two days.

The appeal was heard some months after the transcript was delivered. The court found no substantive errors in the trial and declined to reverse because of the transcript delay despite the fact that Defendant had been in jail since the trial. As the only reason advanced for rejecting the delay claim, the court merely said that defense counsel had advised the appellate court in argument that no effort was made to release the Defendant pending appeal because his family was happy with the vocational training being given the Defendant at the reformatory and believed that the training might well lead to a brighter future for the Defendant. The result in *Kinard* can only be explained on the ground that a five-month delay is insubstantial and not unreasonable. The opinion does not mention the term "prejudice" and *Kinard* cannot be considered as any authority on the issue of whether a showing of prejudice is required.

 In the instant case, the Attorney General points out that Olsen has been released on bail for months and is still out on bail. Ergo, says the Attorney General, he can show no prejudice from the delay. We do not agree that a release on bail of itself negates the existence of any prejudice. It is simply not true that because a convicted Defendant is out on bail, he cannot be harmed by long delays in the prosecution of his appeal. The Defendant remains subject to a lengthy jail sentence and he is entitled to know promptly whether he will have to serve that sentence or not. He is not required to spend years in limbo unable to plan his life or make any commitment for future activity. Moreover, in the instant case, it cannot be overlooked that Olsen spent from September 11, 1975, the date of conviction, to August 27, 1976, in jail before he obtained bail on appeal. If this transcript had been promptly produced when ordered and if reversible error had occurred in the trial, at least some of those months in

jail would not have been served. Under all of the facts of this case, we are of the opinion that a delay of such proportions as has been shown here is so unreasonable and so destructive of the right to a prompt appeal as to render the conviction reversible as a matter of law with no showing of prejudice being necessary. But if we are in error in that holding and a showing of prejudice is deemed to be a *sine qua non,* we believe a sufficient showing of prejudice appears on the face of this record.

Of late, there has been much emphasis in the press and in the halls of Congress on the right to a speedy trial. It has been recognized that the concept of speedy trial involves a vindication of both the rights of the Defendant and the rights of the public. The Defendant is entitled to a prompt determination in the trial court of the charges against him. And the public is entitled to the prompt trial and conviction of persons guilty of crime. The same corollary rights are involved in the concept of speedy termination of appeals.[6] They aid innocent Defendants who turn out to be not guilty of the crimes charged and they aid the public by securing the prompt incarceration of those found guilty of crime. If a speedy termination of appeals is necessary for the vindication of these public policies, it goes without saying that to require prompt production of the trial transcript serves both policies. There can be no commencement of the appeal process, and thus no speedy termination of the appeal, until the transcript exists. No administrative or budgetary problem in connection with the employment of court reporters can be allowed to take precedence over the twin public interests at stake in this case. We must opt for prompt appeals and we must take the step, unwelcome as it is, of turning loose a presumptively guilty Defendant, in order to vindicate the public policies involved.[7]

---

6, *Cf. Way v. Crouse,* 421 F.2d 145, 146 (10th Cir. 1970).

7. The result we have reached in this case cannot be reconciled with an opinion of the Supreme Court of Minnesota in *State ex rel.*

*Mastrian v. Tahash,* 277 Minn. 309, 152 N.W.2d 786 (1967). In that case, the Minnesota Supreme Court denied a habeas petition based on delay in producing the trial transcript, which petition was heard before any appellate court had reviewed the conviction. The petitioner,

■ The prospect of freeing a Defendant adjudged guilty of serious crimes concerns us greatly.[8] But in our view, there is no other reasonably appropriate sanction for the kind of delay that has been experienced in this case. We cannot hold the reporter in contempt; we cannot mandate the Superior Court to hire more reporters; we cannot mandate the Legislature to appropriate more money for that purpose.

■ In ordering this Defendant's release, we wish to make two things abundantly clear concerning the rule of law which we now establish. First, we state explicitly and categorically that our decision shall have no retroactive application and that no motion for reversal or application for other relief on the ground of delayed transcript production shall be entertained by this Court or the Superior Court in closed cases. Relief will also be denied in cases where an appeal has already been heard but not decided. In other words, relief can be granted only in appeals to be heard after the date of the publication of this decision.

■ Second, we hold that this Court will not henceforth entertain any applications for relief based on delay in the production of the transcript unless there has previously been made an application for relief in the trial court. We do not here define the form of such application. It may perhaps be by way of habeas corpus petition, motion under 28 U.S.C. § 2255 or in some other form. But we believe it a sound principle of judi-

cial administration that shortcomings and delays in the performance of duty by trial court employees should be first called to the attention of the trial court. We expect the trial court to adjudicate those applications promptly so that, when necessary, this Court may hear an appeal from its decision without further undue delay.

The conviction is reversed. The cause is remanded to the trial court with instructions to enter a judgment of acquittal.

---

an indigent, had been convicted in the trial court of murder in April of 1964. The trial transcript was not completed until May 1967. The petitioner had apparently spent the entire period of over three years in prison. By the time the Minnesota Supreme Court decided to deny the habeas petition, the transcript had finally been prepared and an explanation of the delay had been offered. A major part of the delay was due to the fact that petitioner had moved the trial court for a change of venue for the trial and the motion was granted. After his conviction, a dispute erupted between the two counties concerned as to which county would pay for the trial transcript. A portion of the delay was due, as in the instant case, to heavy court calendars necessitating overtime for the reporter. The delay was also in part due to the great length of the transcript (over 6,000 pages). The opinion emphasizes that none of

the delay was the result of any "callous indifference or deliberate purpose either to delay or deny [the] appeal . . . ." 152 N.W.2d at 789. The opinion also seems to impose a burden on defense counsel to move for production of a delayed transcript before seeking a reversal on that ground. The Minnesota court also refused to recognize the existence of any right of speedy appeal. We believe that *Mastrian* was simply incorrectly decided.

8. We apparently are the first appellate court which has ordered a reversal for delay in providing a trial transcript. But this result was clearly foreshadowed and envisioned in at least two prior Circuit opinions. *Holmes v. United States, supra; Whitt v. United States,* 104 U.S. App.D.C. 1, 259 F.2d 158 (1958).