# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 03-DP-00090-SCT

*ARTHUR RAY LANIER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/85 |
| TRIAL JUDGE: | HON. J. RUBLE GRIFFIN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JANE E. TUCKER |
| | ALBERT LESTER ALVIS III |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| | JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CARANNA, CONO, |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | REVERSED AND REMANDED - 11/14/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/5/96 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Arthur Ray Lanier (Lanier) appeals from his third trial for the murder of Buford Dedeaux, a policeman for the City of Gulfport. On June 12, 1985, he was found guilty of capital murder in the First Judicial District of the Harrison County Circuit Court. One day later, the jury found that Lanier should suffer the death penalty and the trial court entered judgment thereon. Lanier filed his Notice of Appeal on July 25, 1985. This appeal is now before this Court. Finding issues warranting reversal of Lanier's conviction, we reverse and remand for a hearing to determine whether Lanier may be retried.

## FACTS

¶2. The facts of this case are stated succinctly in this Court's opinion from Lanier's first appeal.

> Policeman Dedeaux was shot to death by the defendant in the first hour of June 8, 1979, in the
> First Judicial District of Harrison County, near the city limits of north Gulfport. After being shot

Dedeaux requested assistance by radio but died shortly after the arrival of assisting officers. When the first policeman arrived he found Dedeaux in his policeman's uniform lying mortally wounded on the driver's side of his police car. At the scene, the following evidentiary items were found: a yellow bicycle, a green ditty bag, a blue watchcap, several spent .22 calibre cartridge casings and Dedeaux' service revolver. The homicide apparently occurred about 12:30 a.m. and Lanier was arrested about 5:00 p.m. the same day at his grandmother's residence in north Gulfport. He was fully advised of his Miranda rights and at approximately 1:10 a.m. on Sunday, June 10, 1979, made a videotaped statement in which he admitted shooting Dedeaux under the circumstances hereinafter related.

Lanier stated that while riding his bicycle, he was stopped by Officer Dedeaux and directed to empty the ditty bag. In complying Lanier removed a pistol from the bag and Dedeaux drew his gun and fired at him. He stated that he fired at Dedeaux while running backwards but was not sure if any of the shots had actually struck Dedeaux, who entered the patrol car and radioed for help. Lanier then stated that he threw the gun away and returned to his grandmother's home. Following this statement, Lanier assisted the officers in locating the gun he had thrown away.

*Lanier v. State*, 450 So. 2d 69, 71-72 (Miss. 1985).

## I. REFUSAL OF LANIER'S MANSLAUGHTER INSTRUCTION THAT REFLECTED HIS THEORY OF THE CASE

¶3. In his first trial, this Court reversed Lanier's conviction for failure to grant an instruction which read:

The Court instructs the Jury that if you find that the State has failed to prove any one of the essential elements of the crime of capital murder, you must find the defendant not guilty of capital murder, and you will proceed with your deliberation to decide whether the State has proved beyond a reasonable doubt all the elements of the lesser crime of manslaughter.

If you find beyond a reasonable doubt that Arthur Ray Lanier killed Buford Dedeaux, a human being, without malice but by his own action by the use of a deadly weapon, without authority of law, and not necessarily in self-defense, then you shall find the defendant, Arthur Ray Lanier, guilty of the crime of manslaughter.

*Lanier v. State*, 450 So. 2d 69, 83 (Miss. 1984).

¶4. The defense also requested that an identical instruction, Instruction D-10, be given in the third trial.

¶5. The defense also requested the following instruction, Instruction D-12, which was denied:

The Court instructs the Jury that if a person who is being unlawfully arrested resists that arrest and kills the party seeking to arrest him to prevent such arrest, and the killing is not done with malice aforethought, the killing is not murder, but manslaughter.

Therefore, if you believe from the evidence in this case that on the date and time testified about, Officer Buford Dedeaux was unlawfully attempting to arrest Arthur Ray Lanier and that Arthur

Ray Lanier resisted said arrest by shooting and killing Officer Buford Dedeaux, but without malice aforethought, and not in self defense, then Arthur Ray Lanier is guilty of manslaughter and you shall so find.

¶6. The Court instead gave Instruction C.02, over the objection of defense counsel which reads:

The Court instructs the Jury that if you find that the State has failed to prove any one of the essential elements of the crime of capital murder, you must find the defendant not guilty of capital murder and you will proceed with your deliberation to decide whether the State has proved beyond a reasonable doubt all the elements of the lesser crime of manslaughter.

The Court instructs the Jury that manslaughter is the killing of a human being **without malice and in the heat of passion** without authority of law and not in necessary self-defense; and if the Jury believes from the evidence in this case beyond a reasonable doubt that the defendant, Arthur Ray Lanier, so killed Buford Dedeaux then you will find the defendant guilty of manslaughter.

(Emphasis added.)

¶7. During the instruction conference, the following was said concerning the above instructions.

BY THE COURT:

. . . And C.02, now, will follow now on Manslaughter. You got that one, Mr. Rose?

BY MR. ROSE:

Yes, sir. We went over this one last time, as I recollect.

BY THE COURT:

This is the one that was here before, this is the one we gave before.

BY MR. ROSE:

Do you have a copy of the Supreme Court decision in the file there? I just want to . . .

BY THE COURT:

(Interposing) It should be, right here it is.

BY MR. ROSE:

I filed a Manslaughter Instruction. Is that the same one I submitted, I don't remember all of that.

BY MR. GOLDEN:

It isn't.

BY MR. ROSE:

I didn't think that it was.

BY MR. GOLDEN:

We had this discussion last time, Your Honor, and he objected to the part about "in the heat of passion." He didn't want that in and this is the same instruction that the Defense, that they should have refused it anyway because the instruction, it wasn't a good Manslaughter instruction because it should reflect that language and that language should be in the instruction

BY THE COURT:

But, they sent it back.

BY MR. GOLDEN:

Yes, sir. But, when they overruled it the first time, the Court said that even if they should have had a Manslaughter instruction, the one that was submitted by the Defense wasn't the proper instruction and this is it and this is the one that you, that we drafted last time and Jim objected to it based on the statute or based on the language of it.

BY MR. ROSE:

Right.

BY MR. GOLDEN:

The language in the statute itself he said it wasn't necessary to have the part in there about heat of passion.

BY MR. ROSE:

There's no evidence of that in this case.

Judge, of course, Mr. Golden is saying something that I sometimes have said, quoting dissent, and that is, you know, that's not worth a lot sometimes, but the rest . . .

. . . .

BY MR. ROSE:

But, the point is, Judge, there's no evidence of heat of passion there.

BY MR. GOLDEN:

Well, that's, that's exactly right and that's why we shouldn't even have the thing in here, off the record.

BY THE COURT:

Say it on the record, you're going to argue it when you get back up there that it shouldn't have been in there. No harm in saying that.

BY MR. GOLDEN:

Okay, we move to leave it on the record, to leave it all on the record.

BY MR. ROSE:

Judge, we think that we're entitled to a manslaughter instruction and the Supreme Court says that and the Supreme Court denied it. This is really my instruction that I submitted to the majority who decided the case didn't oppose it.

BY THE COURT:

I'm going to give it. I think this is a proper Manslaughter instruction. And I think if you had a gun and you shot off into a crowd and accidentally killed somebody, that is what they are talking about, without malice. All right.

Now, C.17 . . .

BY MR. ROSE:

(Interposing) Judge, before we go on to C.17, I want to make sure that the record reflects my objection.

BY THE COURT:

I am positive that it does. Mrs. Crawford has been taking down every word you said. All right. And I understood that you were objecting. . . . .

. . . .

BY MR. ROSE:

Judge, I have another one on manslaughter that I want you to look at.

BY THE COURT:

With all deference to my good friend, the Chief Justice, I don't believe there's any evidence of manslaughter in this case.

All right, here's your Instructions, Jim.

. . . .

BY THE COURT:

D-10 is refused.

BY MR. ROSE:

D-10, Judge, is my version of, in fact, D-10 is an instruction that was given in Hattiesburg in 1980.

BY MR. GOLDEN:

The State objects, it is not a correct statement of the law and it should reflect the language contained in the Court's Instruction on that.

BY THE COURT:

I'm going to refuse it. . . .

¶8. On appeal, Lanier asserts that he was not allowed to present a manslaughter theory that reflected his theory of the case, but instead was given a manslaughter theory that all parties agreed during the instruction conference had no evidentiary support. In essence, Lanier's counsel argues that there are two distinct manslaughter theories: (1) heat of passion manslaughter and (2) involuntary manslaughter and that he was entitled to an instruction on the latter theory.

¶9. Miss. Code Ann. § 97-3-35 (1972) reads:

The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.

¶10. In the present case, Instruction C-02 reads, in relevant part: "without malice **and** in the heat of passion" (emphasis added). This Court reversed Lanier's first conviction because, absent inferences from the physical evidence that Lanier fired first, "the testimony is uncontradicted that Dedeaux fired first and because of this he was entitled to the manslaughter instruction." *Lanier v. State*, 450 So. 2d 69, 80 (Miss. 1984). As we stated:

[A] jury might properly find that the threat of death or serious bodily injury was not imminently pending and thereby reject the theory of self-defense and the acquittal of a defendant. From the same facts a jury reasonably could, we think, if permitted to do so by a manslaughter instruction find a defendant not guilty of capital murder because the fatal shot was in response to a shot first fired by an officer in a tense, sudden confrontation arising without design of either party, thereby reducing the offense to manslaughter with a corresponding reduction in sentence.

*Id.* at 81.

¶11. We agree with Lanier that the statute may be read in the disjunctive and that the killing of a human being without malice, or by the use of a dangerous weapon without authority of the law and not in necessary self-defense, may be manslaughter. In the present case, it was reversible error to grant a heat of passion manslaughter instruction where all parties agreed there was no proof of heat of passion. Further, the trial court erred in refusing Instruction D-10 because the facts of this case warrant this instruction. This is the very ground upon which this Court reversed in the first trial. This Court has previously adopted its own earlier reasoning in cases appealed after retrial. *Wilcher v. State*, 455 So. 2d 727, 730 (Miss. 1984), *cert. denied*, 469 U.S. 927 (Miss. 1987); *Wheat v. State*, 435 So. 2d 1180, 1181 (Miss. 1983). Having reversed on this ground before, and finding the lower court refused to follow our holding on retrial, this Court must again reverse.

**¶12.** In order to make it clear on remand, we also note that Instruction D-12, while inartfully crafted, is adequate to inform the jury on the theory of manslaughter as imperfect self-defense. The imperfect self-defense theory is: "that [the defendant] killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily harm upon him; . . . ." *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985) (quoting *Williams v. State*, 127 Miss. 851, 854, 90 So. 705, 706 (1921)). We reject the State's assertion that there is no evidence of an arrest. It is anomalous to argue there is no evidence of an arrest where the jury found as an aggravating circumstance, beyond a reasonable doubt, that Lanier murdered Officer Dedeaux while attempting to avoid a lawful arrest. For a jury to find Lanier avoided a lawful arrest, evidence must have existed that an arrest occurred. On remand, the defendant should be allowed an instruction which would permit a jury to reject a self-defense theory and still find the defendant guilty only of manslaughter. *Lanier,* 450 So. 2d at 80. We therefore find that the granting of Instruction C-02 was reversible error, entitling appellant to a new trial.

## II. LENGTH OF DELAY IN HEARING APPEAL HAS NOT DENIED LANIER HIS DUE PROCESS RIGHTS

**¶13.** Lanier next asserts that the time it has taken to hear his appeal has been so lengthy as to deny him his due process of law as guaranteed by the United States Constitution and Section 14 of the Mississippi Constitution**.**

**¶14.** Lanier asserts that he is guaranteed an automatic appeal under Section 99-19-104(4) of the Mississippi Code.[1] As his appeal is one of right, Lanier argues from the general proposition that the guarantees of the Due Process Clause must be satisfied. He then proceeds deductively to state that in order to satisfy the Due Process Clause, the appeal must be timely. Nine years, eight months and four days (3550 days) have passed from the time Lanier filed his Notice of Appeal until briefing was completed.

¶15. This Court has only once recognized and briefly discussed the issue of a speedy appeal in the context of a denial of due process. *Haynes v. State*, 584 So. 2d 432, 433 (Miss. 1991). However, both parties agree that the Due Process Clause demands that a criminal defendant has a right to timely appeal. *See Coe v. Thurman* 922 F.2d 528, 530 (1990).

¶16. Furthermore, both the State and Lanier agree on the appropriate test to apply as to whether a criminal defendant has been denied this right. The test is a modification of the *Barker v. Wingo* speedy trial considerations. As stated by the Fifth Circuit:

> These four factors are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." With respect to the factor of prejudice, . . . "it should be assessed in light of the interests of defendants which the speedy trial right was designed to protect." Three such interests were identified: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the accused's defense might be impaired. In the case of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay. We identify three similar interests for prompt appeals: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety

and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980) (citations omitted).

## A.

## Length of Delay

¶17. From the time of the filing of the Notice of Appeal until the time briefing was completed some 3550 days or nine years, eight months and four days, have passed. Of this period of time, over three and a half years were taken to complete the transcript in its original condition. Approximately another four years were consumed with efforts to supplement the record to reach its present condition with the remainder spent in this Court reaching a decision.

¶18. In *Henry v. State*, 486 So. 2d 1209, 1214 (Miss. 1986), this Court referred to the delay of four years in assembling the record of a case "as profoundly more disturbing than the errors alleged" in the case. In *Haynes v. State*, 584 So. 2d 433 (Miss. 1991), this Court called an almost four-year delay "a very serious question."

¶19. Lanier cites various federal decisions which discussed delay in appeals which all contain time periods less in length than the seven and a half years it took to complete the transcript in its present form. *Berkett v. Fulcomer*, 951 F.2d 1431 (3rd Cir. 1991) (18 months); *Coe v. Thurman*, 922 F.2d 528 (9th Cir. 1990) (four years); *Simmons v. Reynolds*, 898 F.2d 865 (9th Cir. 1990) (five years); *United States v. Johnson*, 732 F.2d 379 (4th Cir.), *cert. denied*, 469 U.S. 1033 (1984) (two years); *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir. 1980), *cert. denied*, 450 U.S. 931 (1981); *Cameron v. Lefevre*, 887 F. Supp. 425 (E.D.N.Y 1995) (almost four years); *Wheeler v. Kelly*, 639 F. Supp. 1374 (E.D.N.Y. 1986), *aff'd*, 811 F.2d 133 (1987); *Guam v. Olsen*, 462 F. Supp. 608 (D.C. Guam App. Div. 1978) (two years).

¶20. Lanier has also attached an exhibit to his brief which shows the time taken in death penalty cases from entry of judgment until the record was filed. From his computations, the time it took to file this transcript is three and a half times longer than the average and nearly doubling the second longest time period. The State concedes that this delay is longer than any other case on direct appeal, but reminds the Court that death penalty appeals are a long process, noting that many persons have been on death row a longer period of time than Lanier.

## B.

## Reason for Delay

¶21. The reason for the delay in this case lies almost exclusively at the feet of the court reporter, Joan Crawford. Lanier asserts that the responsibility for preparation of a transcript lies with the court reporter. Miss. Code Ann, § 9-13-33(5) (Supp. 1990) (*repealed by* 1991 Miss. Laws, ch. 573, § 141 (effective July 1, 1991) ("Upon receipt of such notice, it shall be the duty of the court reporter . . . to transcribe and file [her] notes accordingly within sixty (60) days thereafter."); *see also* M.R.A.P. 11 (c)). In fact this Court may take judicial notice of its own language concerning the conduct of the

same court reporter:

> However, Haynes does raise a very serious question in the delay of his case being heard on appeal. Haynes was convicted on June 6, 1985. This Court did not receive the record of the lower court's proceedings until April 14, 1989. The court reporter, Joan Crawford of Biloxi, took almost four years to prepare the record. The Court takes a very stern view of this court reporter's malfeasance in carrying out her official duties. Such malfeasance will not be tolerated. This Court will not tolerate it and we do not expect any chancellor or circuit court judge to permit such a disgraceful neglect of duty by his court reporter.

*Haynes v. State*, 584 So. 2d 432, 433 (Miss. 1991).

¶22. The State does not rebut this assertion save that in its time line the State submits, without authority or explanation, that certain periods of time should be tolled. Lanier would appear to merit some responsibility for the delay in the initial three and a half years it took Joan Crawford to file the initial record. Until Lanier's appellate counsel filed his Motion for Diminution for the record, we find no efforts on the part of Lanier's counsel to speed the process along. Referring again to *Henry v. State*, this Court found that although the "court reporter must bear a majority of the responsibility," counsel for the defendant was "also derelict" in "proceed[ing] to do nothing for 33 months." 486 So. 2d at 1214, 1215. After this initial period, it appears that Lanier's counsel has diligently attempted to have the record completed.

¶23. Other than Lanier's counsel sharing some responsibility for the initial period of delay and lesser delays for time to file motions and write briefs, it appears that the delay is the fault of the court reporter, Joan Crawford.

### C.

### Appellant's Assertion of His Right

¶24. Lanier expressly asserted his right to a speedy appeal in a letter addressed to this Court filed with the Supreme Court Clerk's office on March 6, 1990, which states:

> Dear S. Ct. Clrek's, [sic]

> I have been on death row for a decade or so, and write this letter to say, that I would like to exercise my right to a speedy appeal.

> Sincerely,

> /s/ Arthur Ray Lanier

### D.

### Prejudice to the Defendant

¶25. As to oppressive confinement, the assertions made by Lanier are contingent upon other factors. If he was wrongly convicted, he should not have been in jail at all. This claim obviously awaits the outcome of his fourth trial. The State in opposition states that the defendant has suffered no

oppressive incarceration.

¶26. As to minimization of the anxiety and concern of Lanier while awaiting the outcome of his appeal, it seems only common sense that Lanier has likely suffered some form of suffering while waiting to see if this Court affirms his judgment and sentence. On the other hand, he has enjoyed a stay of his execution during this same time period.

¶27. The final factor, limitation of the possibility that a convicted person's grounds for appeal might be impaired, and impairment of defenses in case of reversal and retrial, must also be considered. The State argues that the defendant confessed to the murder and in no way is his appeal impaired since every allegation of error as to the incompleteness of the record can be resolved to show no reversible error occurred in the trial. In rebuttal, Lanier argues that even assuming that to be true, the point is that since appellate counsel is different, Lanier's grounds for appeal are impaired because his counsel has no opportunity to review missing portions of the record for error.

¶28. Finally, the State makes the argument that without a showing of prejudice the defendant cannot make out his claim of a due process violation. *United States v. Antoine*, 906 F.2d 1379 (9th Cir. 1990), *cert. denied,* 498 U.S. 963 (1992). We agree and hold that a showing of prejudice is necessary to make out a claim of a denial of a speedy appeal.

### E.

### Remedy

¶29. Lanier argues that the only proper remedy for the denial of a speedy appeal in his case is discharge. *Guam v. Olsen*, 462 F. Supp 608 (D.C. Guam App. Div. 1978). He argues that a retrial would only exacerbate the situation. *Guam v. Olsen* is a harsh remedy for a slow appeal, especially in cases where, if affirmed, the sentence the defendant has to serve is longer than the delay of the appeal, or, as in Lanier's case, a sentence will be final. The State counters that the only fit remedy is a suit for civil damages for a violation of his right to speedy appeal. *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir. 1980). This likely is not adequate to remedy a situation such as the one Joan Crawford apparently created in this case and others before this Court. We disagree. This Court has previously taken the position that where no other reversible error exists, then the reversal on the grounds of a denial of a speedy appeal is inappropriate. *Haynes v. State*, 584 So. 2d 432, 433 (Miss. 1991); *see United States v. Johnson*, 732 F.2d 379 (4th Cir.), *cert. denied*, 469 U.S. 1033 (1984). *Haynes*, however, expressly reserved the question of whether a retrial would be permissible where a defendant was denied a speedy appeal. 584 So. 2d at 433. *Johnson*, *supra*, makes note that a Court is not without power to remedy such a situation and other options are available. 732 F.2d at 383.

¶30. This Court's holding in *Haynes*, that the denial of a speedy appeal is not reversible error on its own, is controlling precedent. On remand, since this Court has found other reversible error, Lanier shall be allowed to raise the issue that his ability to defend himself has been prejudiced and that the State deliberately engaged in oppressive conduct. *State of Mississippi v. Harrison*, 648 So. 2d 66 (Miss. 1994).[(2)]

### F.

## The Condition of the Trial Record on Appeal

¶31. The original record in this appeal consists of eleven (11) volumes containing 1550 pages. Three supplementary volumes concerning counsel's efforts to re-construct the record contain 167 pages. The following pages contain inaudible references: Vol. II, pretrial motion for continuance, p. 26 (2); pretrial motion, p. 83 (1); Vol. III, the clerk, p. 141, 142, 143; voir dire, p. 148, 150 (2), 185, 187, 191 (2), 192 (2), 208 (2), 214, 215, 218, 227, 232 (2), 233 (2), 234, 235, 239, 240 (2), 249, 250 (2), 254, 255 (2), 256, 260, 263 (3), 264 (2), 265, 267, 268, 270, 271 (2), 273, 274, 276 (5), 277, 278 (2), 280, 283, 285, 290, 294, 306, 308 (2), 330, 331, 332, 333 (2), 334 (3), 335(5), 336, 337(4); Vol. IV, voir dire 353, 357(3), 358, 361, 366(2), 368, 369(5), 370, 371, 373, 374(2), 387, 390, 400, 401(2), 403(4), 404(2), 405, 409, 411, 422, 424(2), 425, 429, 431, 454(2), 478; pretrial motion, 481(2); opening statement, 488, 494(2), 496, 498, 501(2), 502(3), 505(2), 508; Vol. V, testimony, 713, 722; Vol. VI testimony, 764, 775, 776, 787(6), 788(2), 797, 810, 814, 833, 851, 857, 872, 884, 887, 893, 897, 910; Vol. VII, videotaped statement, 922(2), 929, 936, 939; testimony, 963, 964, 979, 981(2), 1000, 1010; jury instructions, 1011(3), 1019(2), 1020, 1021, 1025(2); closing arguments, 1059, 1062, 1065, 1066(3), 1067, 1069, 1072, 1073(2), 1074(3), 1075(5), 1076(3), 1077(2), 1078(2), 1079(3), 1080, 1081, 1084(2), 1085, 1086(3), 1087(2), 1088(3), 1089(4), 1090, 1091, 1093(2), 1095, 1097(3), 1098(6), 1099, 1100, 1101(3), 1102, 1104, 1105(2), 1106(3), 1111, 1112, 1113, 1114(3), 1115(3), 1116(4), 1117(8), 1118, 1119; Vol. VIII closing arguments, 1127, 1133, 1136, 1139, 1143; Vol. X, jury instructions, 1311, 1312, 1314, 1315, 1316, 1317, 1322, 1324, 1326, 1329(2), 1330(2), 1332; testimony, sentencing phase, 1336, 1341, 1343, 1346, 1353, 1371(2), 1373, 1376, 1378, 1379(2), 1380, 1393, 1396(4), 1398, 1402, 1406, 1407, 1459(2), 1460; Vol. XI closing arguments, sentencing phase, 1473(2), 1474(2), 1475, 1476(2), 1477(6), 1479(1), 1481(3), 1482(3), 1484(2), 1486, 1487(7), 1488(10), 1489(9), 1490(7), 1491(6), 1492(5), 1493(3), 1494(3), 1497(2), 1498(8), 1499(3), 1501(4), 1504(2), 1505, 1507(2), 1510, 1511, 1513, 1514, 1516, 1521, 1523, 1524, 1533, 1540(4), 1541(5), 1542(6), 1543(4), 1544(2), 1545(2), 1546, 1548(2), 1549(2). Off the record discussions are noted at 577, 618, 631, 649, 744, 843, 850, 868, 883, 955, 978, 994, 1013, 1015, 1048, 1317, 1322, 1333, 1456, 1457, 1521.

¶32. The errors made by the court reporter, Joan Crawford, in this case are inexcusable. We have previously chastised Ms. Crawford for her malfeasance and neglect. *Haynes v. State*, *supra*. It is inconceivable that the trial courts of this State would employ court reporters and other personnel who exhibit so few attributes of professionalism and so little regard for the intertwined rights of victims, defendants and the State. Few positions in a society governed by law are more important than that of a court reporter. In the future, the trial courts of this State should take necessary action to ensure that trial court personnel do not endanger the rights of others through negligence, incompetence or malfeasance. We note that the Mississippi Legislature has addressed this problem by promulgating regulations and penalties for willful neglect of duty by court reporters. We hereby charge the lower courts with the responsibility to take notice of these provisions and to enforce the same scrupulously.

¶33. Due to errors below, we reverse and remand for proceedings consistent herewith.

¶34. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. The Section reads:

> The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Mississippi within sixty (60) days after certification by the sentencing court of entire record, unless the time is extended for an additional period by the Supreme Court for good cause shown. Such review by the Supreme Court shall have priority over all other cases and shall be heard in accordance with rules promulgated by the Supreme Court.

Miss. Code Ann. §99-19-101(4) (1972).

2. This Court recently abandoned the *Harrison* rationale in *Walton v. State*, Cause No. 90-KA-00466-SCT (decided April 15, 1996, and not yet reported). However, the *Harrison* test is apropos in the case sub judice. Should the trial court, on remand, find that the State did not deliberately engage in oppressive conduct, and that Lanier's ability to defend himself has not been prejudiced, then Lanier may be retried.