826 So.2d 777 (2002)
Leroy BADGER, a/k/a Jughead, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00440-COA.
Court of Appeals of Mississippi.
September 17, 2002.
Thomas H. Pearson, Clarksdale, attorney for appellant.
Office of the Attorney General by Charles W. Maris Jr., attorney for appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Leroy Badger was convicted of murder. Badger appeals, arguing that his conviction is not supported by sufficient evidence or is against the overwhelming weight of the evidence. Badger also argues that he was denied a speedy appeal. Over a year passed between final judgment and counsel's request to file an out-of-time appeal. We find that the circuit court had no authority to grant an out-of-time appeal since it was requested more than 180 days after judgment. We dismiss.

STATEMENT OF FACTS
¶ 2. In the late hours of March 22, 1997, Leroy Badger and Edward Pope arrived at the King Curtis Lounge in Lambert, Mississippi. During the evening, an unnamed individual removed a necklace from Demetrius "Sweet Pea" Williams's neck. This precipitated cursing, chair and bottle throwing, and a fistfight. The owner of the lounge fired a handgun in the air and told the brawlers to move their dispute outside. They did. Once outside, Williams had his necklace returned. The *778 fight resumed nonetheless. At some point, Badger became involved in a fistfight with an unidentified individual. Another unidentified individual brandished a seven-inch knife.
¶ 3. While the brawl raged, at least two handguns were obtained by Demetrius Williams and Reggie Houston. Shots were fired. Inside the lounge, Alvin James told his girlfriend that they should leave. Prior to Alvin James's exiting the lounge, Badger took from Williams an automatic pistol. According to the testimony of James's girlfriend, when James exited the club, a man approached them and said "what's up now?" The man then shot James, who fell to the ground. According to other bystanders, the man who shot James walked up to him and fired yet again as James lay prone on the ground. James was shot once in his upper right chest and once below his right eye. He later died from his wounds.
¶ 4. Badger was identified as the man who shot James. The bullets taken from James's body were positively matched to Badger's gun. Badger signed a confession in which he stated that "I saw a guy standing beside the club. I ran towards the guy and I shot him. I didn't know who he was." In his initial statement, Badger stated that after he had shot James, Edward Pope shot James a second time as the victim was sprawled on the ground. The next day Badger told the investigating officer that Pope had not shot James but had only kicked him as he lay on the ground.
¶ 5. Following indictment for murder and a jury trial, Badger was convicted on September 4, 1997 and sentenced to a term of life imprisonment. Post-trial motions were denied on September 22, 1997. This appeal, much delayed, followed.

DISCUSSION

1. The Evidence Supporting the Verdict
¶ 6. The initial issue that Badger raises concerns the sufficiency of the evidence to convict of murder as opposed to manslaughter. Since we find that the appeal was not timely filed, we have no authority to rule on this issue.

2. Delayed Notice of Appeal and Denial of Speedy Appeal
¶ 7. We now analyze the issues about the timeliness of this appeal. First we examine the effect of the late notice of appeal. Then we will briefly analyze the elements of Badger's speedy appeal claim to make certain that the latter claim does not affect the late notice problem. The issues of delay in filing an appeal and delay that occurs once the appeal is timely filed have at least some chronological overlap.
¶ 8. The long-standing rule is that a notice of appeal is to be filed within thirty days of judgment or from the denial of certain post-trial motions. M.R.A.P. 4(a), (d) & (e). There has also been a right for a party to seek a 30-day extension to file a notice of appeal, provided the request is "filed not later than 30 days after the expiration of the time otherwise prescribed by this rule." M.R.A.P. 4(g). By a case decided in 1984, the Supreme Court held that in some cases these limits could be "suspended" if a criminal defendant, through no fault of that party, had not timely filed. Williams v. State, 456 So.2d 1042, 1043 (Miss.1984).
¶ 9. In 1997, that open-ended opportunity under Williams became finite. The appellate rules were amended to establish an explicit time deadline for granting out-of-time appeals. A trial court may reopen the time for appeal if "a party entitled to receive notice of entry of a judgment or *779 order did not receive such notice ... within 21 days of its entry" and if "no party would be prejudiced...." M.R.A.P. 4(h). A request to reopen is to be filed with the trial court "within 180 days of entry of the judgment or order or within 7 days of receipt of such notice [of the entry of judgment], whichever is earlier...." Id. (emphasis supplied).
¶ 10. Badger and his counsel allowed far more than 180 days to pass between the denial of post-trial motions in September 1997 and the filing of a request for an out-of-time appeal in January 1999. Authority to grant the relief no longer existed. Instead, Badger would be limited to filing under the post-conviction relief statutes. It is evident that these filings were not under those statutes. Necessary affidavits and other requirements of the post-conviction relief regime were not prepared. Miss.Code Ann. §§ 99-3-1 through 99-39-29 (Rev.2000).
¶ 11. There is a right to suspend the appellate rules in certain circumstances. M.R.A.P. 2(c) (may suspend in the "interest of expediting decision, or for other good cause shown"). Rule 2(c) also states that "in civil cases the time for taking an appeal as provided in Rules 4 or 5 may not be extended." Id. This suggests that extension is permitted in criminal cases. However, we note that the language in Rule 2(c) just quoted has existed ever since the Mississippi Rules of Appellate Procedure were adopted. 644-647 So.2d XXIII, XXV (West Miss. Cases 1995) (effective Jan. 1, 1995). The 1984 Williams case that we have already discussed announced that there was a right to suspend the requirements for a timely appeal in criminal cases. Williams, 456 So.2d at 1043. Beginning in 1997, it would be more accurate to analyze these issues in terms of reopening the time for appeal for at most 180 days after judgment. M.R.A.P. 4(h). The comment to the rule provides that a late appeal may be granted "only upon a motion filed within 180 days of the entry of judgment or within 7 days of receipt of notice of such entry, whichever is earlier." M.R.A.P. 4(h) cmt. We find no authority to suspend the rules to permit an out-of-time appeal after those deadlines. The 180 days and 7 days are exceptions to the normal requirements. To suspend those requirements would be to create exceptions to exceptions. Instead, we conclude that these deadlines form boundaries for the judicial discretion that can be exercised.
¶ 12. We find support for the conclusion that the 180 days is an absolute deadline by the interpretation of a federal rule. The almost identically-worded Federal Rule of Appellate Procedure 4(a)(6) applies only to civil cases, but it has been found to provide for an absolute 180-day limit:
The seven-day window for filing motions under Rule 4(a)(6) is opened only if and when a party receives notice of the entry of the judgment or order he seeks to appeal. That notice must be received "from the clerk or any party." In no case, however, may the window be opened more than 180 days after the entry of the judgment.
Benavides v. Bureau of Prisons, 79 F.3d 1211, 1214 (D.C.Cir.1996).
¶ 13. Badger's request for an out-of-time appeal came too late. Even if our interpretation of the limitation of 180 days in the relatively new Rule 4(h) is too restrictive, we find nothing in Badger's appeal to constitute good cause for suspending the requirement in this case.
¶ 14. We finally turn to the related issue of the alleged denial of Badger's right to a speedy appeal. The Mississippi Supreme Court first recognized such a right in Haynes v. State, 584 So.2d 432, 433 (Miss.1991). When a denial of speedy *780 appeal claim is properly presented, it is analyzed by using a multi-factor test similar to that used to analyze constitutional speedy trial claims. A court should consider these elements:
"[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." With respect to the factor of prejudice,... for prompt appeals [the Court will consider]: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.
Lanier v. State, 684 So.2d 93, 98 (Miss. 1996). However, "the denial of a speedy appeal is not reversible error" by itself. Lanier, 684 So.2d at 100. Unless prejudice can be shown by a delay in reaching a meritorious issue, no relief is given for a failure to receive a speedy appeal.
¶ 15. Various reasons explain the late consideration of Badger's appeal. The initial fault was defense counsel's failure timely to appeal the trial court's denial of post-trial motions. The request for reopening the time for appeal was finally filed in January 1999. Over a year later, on February 8, 2000, the trial judge signed an order denying the motion. On February 16, 2000, defense counsel filed a motion asking the trial court to reconsider. On April 13, 2000, the trial judge entered an order allowing an out-of-time appeal. The actual notice was then filed on June 13, 2000.
¶ 16. The record reflects that the court reporter subsequently added to the delay. A year passed after the first deadline for the court reporter before the transcript was finally submitted on August 13, 2001. Defense counsel claims that the court reporter was ordered in 1998 to prepare the transcript in this matter. In fact, though, that order concerned only the preparation of a transcript of the testimony of one witness since that testimony would be relevant in another trial growing out of this same incident.
¶ 17. The speedy appeal precedents are of no help to Badger. They do not provide a basis on which to consider this appeal despite the delay in filing a notice of appeal.
¶ 18. THE APPEAL FROM THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.